No. 55,066

STATE OF KANSAS, *Complainant*, v. WILLIAM V. DIXON, JR., *Respondent*.

(664 P.2d 286)

Opinion filed May 25, 1983.

*James W. Wallace*, of Wallace, Brantley & Shirley, of Scott City, argued the cause and was on the brief for respondent.

*Roger N. Walter*, disciplinary counsel, argued the cause and was on the brief for complainant.

*Per Curiam:* Two separate disciplinary complaints filed pursuant to Supreme Court Rule 212 (230 Kan. civ) against William V. Dixon, Jr., an attorney admitted to practice law in the State of Kansas, have been consolidated in this original action.

Docket #W2165 filed with the Kansas Board for Discipline of Attorneys was a complaint alleging that respondent had ne-

glected legal matters entrusted to him in connection with the probate of the estates of Grady Sebastian and Beulah Sebastian. This matter will be referred to as the Sebastian complaint.

Docket #W2418 was filed by Arno Windscheffel, Disciplinary Administrator, and alleged in twenty-two separate counts that the respondent neglected legal matters entrusted to him in twenty-two probate proceedings filed in Greeley County. This matter will be referred to as the Windscheffel complaint.

The Sebastian complaint was heard by a panel of the Kansas Board for Discipline of Attorneys on August 20, 1981, and the hearing panel found that there was clear and convincing evidence that respondent had neglected legal matters entrusted to him in both the Grady Sebastian and Beulah Sebastian estates. The Windscheffel complaint was heard on November 24, 1981, and the hearing panel found that there was clear and convincing evidence that respondent had neglected legal matters entrusted to him in twelve of the twenty-two counts of the complaint. Respondent filed exceptions to both panel reports. We will first consider the Sebastian complaint.

Grady Sebastian died testate January 8, 1963. His will, which left everything to his widow Beulah, was admitted to probate January 16, 1963, at which time Cecil, a son, was appointed executor. Respondent was counsel for Beulah and Cecil and prepared and published a notice of appointment of executor. An affidavit of publication was filed. Several creditors filed claims but nothing else was done until October, 1979. No inventory was filed although it was established that the decedent and Beulah owned a residence in joint tenancy and he owned an interest in commercial property known as the Southside service station, motel and restaurant. In June of 1968, Cecil, as executor, entered into a contract for the sale of the Southside property. It was to be sold on contract with an executor's deed, abstract of title and other documents to be deposited with the First National Bank of Tribune as escrow agent. The sale was consummated without any petition to or approval of the probate court. The deed, abstract and other escrow papers were never delivered to the escrow agent. The purchasers made regular payments to the Bank, as escrow agent, and those payments were placed in a non-interest bearing checking account.

In February of 1974, Beulah entered into a contract for sale of

the residential property. This sale was also handled by respondent and again the deed from Beulah, the abstract of title and other contract documents were to be escrowed with the First National Bank. They were not. The purchasers made regular payments which were deposited in a non-interest bearing checking account.

Beulah Sebastian died testate April 26, 1976. Her will which left everything to Cecil was admitted to probate on May 19, 1976, at which time Cecil was appointed executor and letters testamentary were issued to him. Respondent, as attorney for Cecil, did nothing further until February, 1979. No inventory was ever filed.

Cecil Sebastian died intestate October 29, 1976, survived by his widow and four children. The widow was appointed administratrix of Cecil's estate and retained an attorney from Goodland to handle the probate proceedings. Numerous attempts were made to get respondent to close the Grady and Beulah Sebastian estates but they were unsuccessful, although respondent made repeated promises that they would be closed. Finally in July of 1978, a petition for appointment of Daryl Sebastian as administrator d.b.n. of Beulah's estate was prepared. Daryl signed the petition July 14, 1978, but respondent did not file it until February, 1979.

In May of 1978, the purchasers of the residence property desired to refinance the purchase contract they had entered into with Beulah. The lending company then discovered there was no deed, abstract or other escrow documents at the bank. In February, 1979, the purchasers retained counsel to get matters straightened out. He wrote respondent by letters dated February 2, May 9, August 20, October 8 and October 19, 1979, and made numerous verbal requests during the period. Respondent made numerous promises and on October 11, 1979, filed a petition to have Daryl Sebastian appointed administrator c.t.a. of Grady's estate. Eventually, deeds from both estates were obtained. At the time of the panel hearings there was $9,733.07 in the residence escrow account and $19,827.03 in the Southside property account. Neither was drawing interest. Despite numerous requests by Daryl, other heirs and counsel for Cecil's estate, no progress could be made toward closing the Grady and Beulah Sebastian estates. Ultimately a complaint was filed with the Disciplinary

Administrator and at the time of the hearing of the complaint in August of 1981, respondent had done nothing further toward closing the estates. In the meantime, Cecil Sebastian's estate could not be completed due to the failure to close his parents' estates. The panel found that respondent had neglected these legal matters.

We now turn to the Windscheffel complaint filed by the Disciplinary Administrator. The office of the Disciplinary Administrator, having had earlier complaints similar to the Sebastian complaint, undertook an investigation of all pending probate matters in Greeley County in which respondent was either the fiduciary or the attorney for the fiduciary. That investigation disclosed twenty-two pending probate cases in which the Disciplinary Administrator was of the opinion that the respondent had neglected legal matters entrusted to him. He then filed a complaint setting forth twenty-two separate counts of alleged neglect. All involved proceedings which appeared to have been handled in a similar manner as the Sebastian estates. The hearing panel found the evidence was insufficient to establish the charged misconduct as to Counts 1, 2, 3, 5, 6, 8, 11, 16, 18 and 21. The hearing panel found neglect in the remaining twelve counts. Due to the voluminous number of counts and their similarity we will set forth the facts as found by the panel only briefly.

Counts 4, 7 and 15 are interrelated in a manner similar to the Sebastian estates. Count 4 involves the estate of Roy Darland, who died testate January 30, 1964. Respondent was appointed executor on February 21, 1964. Nothing further has been done. Real estate was involved. Count 7 relates to the estate of Charles Darland, who died testate July 31, 1966. His brother Russell was appointed administrator c.t.a. on August 11, 1966. Nothing further has been done. Charles and Russell were sons of Roy. Real estate was involved. Russell Darland, Count 15, died intestate April 18, 1974. An administrator was appointed April 23, 1974; no tax returns, inventory or appraisal were ever filed although a petition for final settlement was filed April 9, 1981. The petition was never heard. Attempts by heirs to sell real estate have been delayed pending closing of the three Darland estates.

Lon A. Young, Count 9, died testate January 26, 1969, and his will was admitted to probate February 13, 1969. Estate and inheritance taxes were paid in 1970 and 1971. No accounting,

petition for final settlement or other proceedings were shown as of the time of the panel hearing. We are now advised the estate was closed in May of 1982.

George E. Copeland, Count 10, died testate February 12, 1974, and his will was admitted to probate March 4, 1974. Respondent was appointed as a co-executor. An inventory was filed and taxes were paid in 1975 and 1976. Nothing further was done although we are now advised the estate was closed in June of 1982.

Count 12 involves the estate and testamentary trust of Mary J. Simpson. Respondent was appointed testamentary trustee in August of 1971. Myrtle Potts, a sister of the decedent, was a lifetime beneficiary of the trust with the remainder to go to the Greeley County Hospital on her death. Respondent filed an initial accounting as of December 31, 1971, which reflected a trust balance of $18,069.59. There have been no further accountings. Myrtle Potts died in 1976, and after payment of her funeral expenses, $7,115.40 remained in the trust. That money has been kept in a non-interest bearing checking account and has not been distributed to the hospital.

Jesse Bartholomew, Count 13, died April 17, 1971. Respondent was appointed administrator October 31, 1973. A petition to determine descent was filed by respondent in 1976. Nothing further has been done in either proceeding.

Count 14 involves the estate of Ernest D. Kysar, who died testate October 25, 1978. His will was admitted to probate December 15, 1978; an inventory filed May 28, 1980, reflected an estate value of $266,126.16. A petition for final settlement was filed October 26, 1980. The estate has not been closed.

Robert W. Vogt, Count 17, died testate March 5, 1976, and his will was admitted March 12, 1976, and his widow appointed executrix. The widow died in 1981 and we are now advised the estate of Robert was closed in June of 1982.

Lila B. Curtis, Count 19, died March 24, 1978, and an administrator was appointed October 16, 1978. On November 4, 1980, a petition for final settlement was filed but never heard.

R. W. Holland, Count 20, died testate May 19, 1976. The will was admitted and executor appointed May 22, 1976. No inventory was ever filed or tax clearance shown although a petition for final settlement was filed in June of 1981. It has never been heard.

B. R. Austin, Count 22, died intestate December 19, 1961, and his widow was appointed administratrix on February 19, 1962. An inventory was filed and real estate sold at private sale which was never confirmed. Nothing further has been done.

The record clearly supports the findings of the disciplinary hearing panel that respondent neglected legal matters entrusted to him in each of the foregoing instances.

DR 6-101(A)(3) (230 Kan. cxxii) provides that a lawyer shall not "[n]eglect a legal matter entrusted to him." This standard has been clarified by case law and more particularly by ABA Comm. on Ethics and Professional Responsibility, Informal Op. 1273, (1973), which defines neglect as follows:

"Neglect involves indifference and a consistent failure to carry out the obligations which the lawyer has assumed to his client or a conscious disregard for the responsibility owed to the client. The concept of ordinary negligence is different. Neglect usually involves more than a single act or omission. Neglect cannot be found if the acts or omissions complained of were inadvertent or the result of an error in judgment made in good faith."

The misconduct in the instant case does not involve an isolated instance or an inadvertent error, nor does it involve an erroneous judgment made in good faith. Rather it involves a consistent and repeated practice of undertaking a responsibility to clients, and then totally ignoring that responsibility. The extent of the neglect is extreme and has reached proportions never before considered by this court.

The courts have held that an attorney's pattern of conduct in the case of a single client can amount to a violation of DR 6-101(A)(3). *State Bar v. Grubbs*, 396 Mich. 275, 240 N.W.2d 233 (1976); *Matter of Kennedy*, 97 Wash. 2d 719, 649 P.2d 110 (1982). Similarly this court has held that the consistent practice of accepting cases and neglecting to perform or complete the legal services contemplated is a violation of DR 6-101(A)(3). *State v. Alvey*, 215 Kan. 460, 524 P.2d 747 (1974). There can be no doubt as to respondent's violations of numerous provisions of the Code of Professional Responsibility as adopted by this court. S. Ct. Rule 225 (230 Kan. cxi).

The disciplinary hearing panels in this case recommended indefinite suspension in each instance. Recommendations of the Board for Discipline of Attorneys are advisory only and are not binding upon this court. S. Ct. Rule 212(f) (230 Kan. cv). Misconduct by the respondent has been clearly established and it is

the duty of this court to determine the appropriate discipline. Determination of the discipline to be imposed, though always difficult, is unusually troublesome in the present case. Respondent does not stand charged with any form of dishonesty, self-dealing, or other reprehensible conduct involving moral turpitude and performed for his own enrichment. Rather he stands charged with procrastination, a human frailty we all share in varying degrees.

The hearings on these complaints were held in August and November of 1981, and the panel reports recommending indefinite suspension were not filed with this court until November of 1982. Respondent, in his brief and in his argument before this court, suggests that private censure be imposed, along with some period of supervised probation during which he be allowed to complete the estates in question and make progress reports to the court. Respondent made a similar suggestion at the time of the evidentiary hearings over a year and one-half ago. It now appears that of the twelve cases contained in the Windscheffel complaint, three have been closed and there has been no additional progress in the other nine. The cases considered by the panel span more than twenty years and many still remain unresolved.

In *Mendicino v. Magagna*, 572 P.2d 21 (Wyo. 1977), the court considered a case quite similar to ours. The court stated:

"The present status of these estates would not be particularly shocking to this court were it not for the fact that most of them have been accumulating dust in the files of the courthouse as a result of procrastination and dilatory conduct for a period of from six to twenty-eight years. Although the respondent has sought to give an appearance of making an effort in recent years to finally dispose of these important pieces of his clients' business and has, in fact, disposed of approximately twenty-two estates since 1975, we are still unable to sanction or tolerate either his refusal or his inability to finalize his task. It is true, and we want it made clear, that there have been no charges of dishonesty, misrepresentation of fact, or sinister motive brought against the respondent in connection with these estates. We note, also, that there have been no allegations that any client actually suffered a pecuniary loss as a result of the respondent's conduct. For the most part, the assets of these estates have been paid over to the beneficiaries. Nevertheless, we cannot tolerate this kind of negligent disregard of the public's business which has been entrusted to a member of this Bar. A member of the legal profession is never justified in delaying his or his client's business by reason of laziness, procrastination, or a cavalier approach to the client's interests. See, *In re Mayne's Estate*, Wyo., 345 P.2d 790, 795.

"It is for all who are members of the legal profession in Wyoming and

elsewhere to scrupulously and diligently discharge our obligations to the clients who entrust us with their business. Lawyers and judges everywhere are, themselves, on public trial in this day and age. The entire judicial branch of the government is suspect—our diligence is being questioned—our integrity is at issue—the very system of attorney-client relationship which has its genesis in trust, is now fraught with public misgiving." p. 23.

Respondent's repeated failure to assume his responsibilities as a lawyer is demonstrated by his continued failure or refusal to take action to complete the various probate proceedings when he has had ample opportunity to do so. In spite of repeated warnings from this court through the office of the Disciplinary Administrator, respondent continues to neglect his legal commitments and duties. The record in this case adequately reflects respondent's inability or refusal to accept and perform the obligations of the legal profession. Despite the recommendations of the hearing panels that respondent be disciplined by indefinite suspension, a majority of the members of this court are of the opinion respondent should be disbarred. Continued neglect of a client's legal matters in violation of the Code of Professional Responsibility cannot and will not be tolerated.

IT IS THEREFORE ORDERED AND ADJUDGED that William V. Dixon, Jr., be and he is hereby disbarred and the Clerk of the Supreme Court is directed to strike the name of William V. Dixon, Jr., from the rolls of attorneys admitted to practice law in the State of Kansas.

IT IS FURTHER ORDERED that William V. Dixon, Jr., pay the costs of this action and that he forthwith comply with Supreme Court Rule 218 (230 Kan. cvii).

HERD, J., not participating.