No. 71,246

In the Matter of HOWARD L. JENKINS, II, *Respondent.*

(877 P.2d 423)

Opinion filed July 8, 1994.

*Stanton A. Hazlett,* deputy disciplinary administrator, argued the cause, and *Bruce E. Miller,* disciplinary administrator, was with him on the formal complaint for petitioner.

*Howard L. Jenkins, II,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Howard L. Jenkins, II, an attorney admitted to the practice of law in Kansas. Seven separate complaints were filed, Cases Nos. B4902, B4984, B5120, B5131, B5145, B5293, and B5295, which were consolidated for hearing before the Kansas Board for Discipline of Attorneys (Board) and this court. The facts, as determined by the hearing panel of the Board are not disputed by respondent. The exhibits in all cases were admitted by stipulation.

The following pertinent findings were made by the panel:

"B. General Findings of Fact

"In reaching its decision the hearing panel finds that the following facts were established by clear and convincing evidence and applied to all of the cases and counts before the panel:

"1. Respondent is an attorney at law . . . .

"2. On November 4, 1991, the Respondent filed with the Kansas Supreme Court his request for transfer to disability inactive status pursuant to Supreme Court Rule 220(c) [1993 Kan. Ct. R. Annot. 195]. In his request the Respondent stated that he was suffering from a current disability due to mental infirmity which made it impossible for him adequately to defend himself in various disciplinary proceedings pending against him at that time. In response to that request, the Kansas Supreme Court on November 8, 1991, ordered that the Respondent cease practicing law and that he be transferred to disability inactive status until a determination is made of Respondent's capability to practice law, and ordered that Respondent shall not assume active status until further order of the Kansas Supreme Court.

"3. Respondent . . . was admitted to the Kansas Bar in 1980. He had been engaged in the active practice of law either as a governmental employee or as a private practitioner since that date until November of 1991.

"Case No. B4902

"4. . . . Respondent admitted all of the allegations of the complaint.

"5. Briefly summarized, the complaint alleges that the Complainant employed Respondent to perform the legal work necessary for her to adopt her younger brother. The Respondent began work on the adoption and was then advised by the Complainant that she wished to discontinue the adoption proceeding. Subsequently, 6 months later Complainant advised the Respondent she wished to re-open the adoption proceedings. Complainant called Respondent on numerous occasions in January of 1990 and was at one point was told by Respondent that the adoption had been completed. Subsequently, Complainant learned that the adoption had, in fact, not been completed.

"Respondent has stipulated that his conduct violated Model Rule 1.4 [1993 Kan. Ct. R. Annot. 267] communication, and 1.3 [1993 Kan. Ct. R. Annot. 263] diligence.

"Case No. B4984: Count I

"6. . . . The sole issue remaining for determination in this case is whether Respondent violated the Model Rules by failing timely to handle [an] appeal and file briefs on behalf of the Complainant, Respondent having admitted all of the allegations of the complainant.

"7. In this case, Complainant was convicted in 1988 of possession of cocaine with intent to sell. His trial counsel timely filed notice of appeal and the docketing statement with the Kansas Court of Appeals. Respondent was retained to file the brief for the Complainant on appeal. Either while out on bond pending the trial of this earlier case, or while out on bond awaiting its appeal, the Complainant was arrested on a second charge and retained the Respondent to represent him in the trial of the second arrest case.

"8. The evidence was in conflict as to whether the Complainant told the Respondent to concentrate his efforts on the trial of the second case and essentially, to abandon his efforts on the appeal, or whether Respondent was told to pursue both matters simultaneously.

"9. The panel is unable to find by clear and convincing evidence that Respondent violated Model Rules of Professional Conduct 1.1 [1993 Kan. Ct. R. Annot. 258] [competence], 1.3, 1.4, 1.15 [1993 Kan. Ct. R. Annot. 299] [safekeeping of property] , or 3.2 [1993 Kan. Ct. R. Annot. 313] [expediting litigation], as alleged by the Disciplinary Administrator; however, the panel finds by clear and convincing evidence that Respondent violated MRPC 8.4(d) [1993 Kan. Ct. R. Annot. 347] conduct prejudicial to the administration of justice, and (g), engaging in conduct that adversely reflects on the lawyer's fitness to practice law, by failing to notify the Court of Appeals that the appeal was to be dropped.

"10. Additionally, the panel finds that during cross examination by the panel, Respondent admitted that he had disobeyed his obligation under the rules of the Kansas Court of Appeals by failing to respond to the order to show cause issued by the Court of Appeals. Respondent violated and admitted his violation

of Rule 3.4(c) [1993 Kan. Ct. R. Annot. 318], knowingly disobeying an obligation under the Rules of the Tribunal.

. . . .

### "Case No. B4984: Count II

"13. . . . Respondent admitted all allegations of the Complainant. This case involves the Complainant, Gaynell Brewster, who was injured when a Wichita City Bus was involved in a traffic accident.

"14. Shortly after the accident Complainant met with the Respondent and the Respondent helped her complete an application for the recovery of Personal Injury Protection ('PIP') benefits. Respondent has stipulated that this PIP claim was not timely filed with or submitted to Complainant's insurance carrier.

"15. Respondent filed suit against the City of Wichita but did not obtain service against the City. The case was dismissed for lack of prosecution, and the case could not be refiled since the statute of limitations had expired by the time the case was dismissed for lack of prosecution.

"16. Complainant and Respondent entered into an agreement whereby [Respondent] agreed to pay to [Complainant] certain sums of money to compensate her for losses she sustained as the result of Respondent's failure timely to file the PIP claim and to prosecute the lawsuit on her behalf. Respondent made several thousand dollars in payments to Complainant, and the sole issues remaining before the panel were to determine the terms of the agreement between Complainant and Respondent, the amount of money paid, and whether or not written or oral notification was given to Complainant to obtain independent representation in reaching an agreement with Respondent.

"17. The Complainant Gaynell Brewster appeared and testified in court, and her testimony differed sharply with the testimony of Howard Jenkins.

"18. The panel is unable to conclude by clear and convincing evidence that Respondent violated the terms of the agreement which he reached with Complainant, that he failed to pay her the sum of money agreed upon, or that he failed to recommend to Complainant that she obtain independent counsel before entering into an agreement with Respondent.

"19. Based upon Respondent's stipulation that he failed timely to file the PIP claim and that he failed to prosecute the action which he filed on behalf of Complainant, the panel concludes that Respondent violated Rule 1.1, Competence, Rule 1.3, and Rule 3.2, Expediting litigation.

### "Case No. B4984: Count III

"20. . . . Respondent admitted all of the allegations of the Complainant. This case involved a bulk sale contract drafted by Respondent; the agreement referred to an attachment A, but such attachment was not attached to the bulk sales agreement.

"21. As the result of Respondent's drafting of the agreement, Mr. Jenkins' client sued the people who purchased the restaurants from his clients, and District Court Judge Keith Anderson in handing down judgment noted, 'The court

believes the testimony of Mr. Jenkins in bolstering the position of the Plaintiff to be [more] his efforts at camouflaging his mishandling of the representation of plaintiff and the drafting of the bulk sale agreement than accurate reporting of what occurred.'

"The Respondent has stipulated to paragraphs 12 through 17 of the Complaint of the Disciplinary Administrator, and further stipulates that his conduct violated rules 1.1 Competence, 1.3 Diligence, 4.3 [1993 Kan. Ct. R. Annot. 328] Dealing With Unrepresented persons, and 8.4(g) Engaging in Conduct Adversely Reflecting on the Fitness to Practice Law.

### "Case No. B5120

. . . .

"23. The Respondent admitted paragraphs 1 through 6, constituting both Counts I and II, of the formal complaint filed by the Disciplinary Administrator.

"24. Complainant retained Respondent by paying him a total of $1,050 in attorneys fees to represent him with regard to a change of custody in child support questions.

"25. The child support and custody issues were to be determined at a hearing held on February 7, 1990; Complainant was not present at the hearing and subsequent to the hearing tried to contact Respondent to determine the results of the hearing.

"26. Respondent failed to inform the Complainant about the results of the hearing, and the Journal Entry containing the result of the hearing was prepared by opposing counsel, mailed to Mr. Jenkins, who then failed to sign and return it to opposing counsel. The order was subsequently signed by the Judge and entered pursuant to Supreme Court Rule 170 [1993 Kan. Ct. R. Annot. 148].

"27. Complainant received a letter from the Sedgwick County Court Trustee advising him that he was behind in child support by over $2,000 and this was the first knowledge Complainant had that child support had been increased.

"28. Complainant set up an appointment with Respondent to discuss the letter received from the Court Trustee; Respondent failed to keep the appointment and failed to keep numerous other appointments. Respondent similarly failed to respond to numerous telephone inquiries by Complainant.

"29. Count II of this case has to do with Respondent's failure to timely file written response to the investigation as requested by the investigator.

"30. Respondent admits that his conduct violated Model Rules 1.1 Competence, 1.3 Diligence, Rule 1.4 Communication, 8.4(d) Engaging in conduct prejudicial to the administration of justice, and Supreme Court Rule 207 [1993 Kan. Ct. R. Annot. 170 Failure to Cooperate with the Disciplinary Administrator.

### "Case No. B5131

"31. Upon the motion of the Disciplinary Administrator, with no objection by Respondent, the formal complaint was amended by the deletion of paragraphs 4 and 5.

"51. Respondent admitted the allegations of paragraphs 1 through 3 of the formal complaint.

"52. This case involves Respondent's handling of the personal injury claim of Nasser Tayyab against the City of Wichita. Respondent filed a 1.5 million dollar lawsuit on behalf of complainant in September, 1989. Respondent failed to properly respond to discovery requests and apparently the lawsuit was subsequently dismissed. The allegations regarding failure to properly communicate with complainant were withdrawn.

"53. Respondent has stipulated that his conduct violated Model Rules 1.1 (competence) and 1.3 (diligence).

#### "Case No. B5145

. . . .

"55. Respondent admitted the allegations of paragraphs 1 through 5 of the formal complaint.

"56. This case involves the complaint of June Stallworth-Taylor who retained Respondent to represent her in a racial discrimination lawsuit arising out of her termination of employment.

"57. Respondent's failure to file a proper pretrial questionnaire caused the continuance of the pretrial conference. Respondent further failed to properly and timely respond to defendant's motion for summary judgment and complainant's suit was dismissed.

"58. Respondent has stipulated that his conduct violated Model Rules 1.1 (competence), 1.3 (diligence) and 8.4(d) (conduct prejudicial to the administration of justice).

#### "Case No. B5293

. . . .

"60. Respondent admitted the allegations of paragraphs 1 through 7 of the formal complaint.

"42. This case involves the personal injury claim of Eula Hoel. Respondent filed a lawsuit on behalf of complainant but same was dismissed twice due to Respondent's failure to respond to discovery and [Supreme Court Rule 118 (1993 Kan. Ct. R. Annot. 119)] requests.

"43. Respondent failed to communicate and negotiate with representatives of the defendant and failed to inform the complainant of pertinent facts regarding her claim, including the proper statute of limitations date.

"44. Respondent has stipulated that his conduct violated Model Rules 1.1, (competence), 1.3 (diligence), 1.4 (communication) and 8.4(d) (conduct prejudicial to the administration of justice).

#### "Case No. B5295

. . . .

"46. Respondent admitted the allegations of paragraphs 1 through 7 of the formal complaint.

"47. This case involves the complaint of Cheryl McGilbray who retained Respondent to probate her mother's Will. Complainant paid Respondent a total of $4,000 but Respondent failed to file a petition for the probate of said Will in a timely fashion and the subject estate was subsequently distributed in a manner contrary to the wishes of the testatrix.

"48. Respondent further failed to communicate with complainant, failed to respond to her requests for the return of documentation and accounting information and the return of the monies paid to him.

"49. Respondent has stipulated that his conduct violated Model Rules 1.[1] (competence), 1.3 (diligence), 1.4 (communication) and 1.15 [1993 Kan. Ct. R. Annot. 299] (accounting and return of monies and documents)."

The panel set forth conclusions of law, noted aggravating and mitigating circumstances, and made recommendations as follows:

"C. Conclusions of Law

"In reaching its decision, the hearing panel finds that the following law is applicable to the matter before the Panel: . . . .

"MRPC 1.3      Diligence
"MRPC 1.4      Communication
"MRPC 1.15     Safekeeping Property
"MRPC 3.2      Expediting Litigation
"MRPC 3.4(c)   Knowingly Disobeying An Obligation Under Rules of the Tribunal
"MRPC 4.3      Dealing with Unrepresented Persons
"MRPC 8.4(d)   Conduct Prejudicial to the Administration of Justice
"MRPC 8.4(g)   Engaging in Conduct that Adversely Reflects on Lawyer's Fitness to Practice Law

"Kansas Supreme Court Rule 207 Failure to Cooperate

"Based upon either the stipulations of Respondent or the findings of this Panel by clear and convincing evidence, Respondent violated each of these rules, many on numerous occasions as set forth in the findings of fact above.

"D. Mitigating or Aggravating Circumstances

"The hearing panel in reaching its recommendations as to discipline in this case specifically finds the following mitigating and aggravating factors influenced their decision.

"Aggravating Circumstances

"In August of 1990, the Respondent received informal admonition for violation of MRPC 1.1, Competence, and MRPC 1.4, Communication.

"Mitigating Circumstances

"Based upon four letters furnished to the panel by Respondent from his psychologist, Kerin L. Schell, PhD, and his own testimony, highly summarized, the

panel found the following mitigating factors [certain personal references have been omitted]:

. . . .

"34. Respondent's marriage became difficult, and he began experiencing sleep disorders.

. . . .

"36. Mr. Jenkins was in weekly treatment with his psychologist from October of 1991 until April of 1992, and during that time he was in counseling sessions with ministers and others.

"37. By a letter dated October 31, 1991, Dr. Schell indicated that Respondent was suffering from chronic major depression of several years duration and that he was not capable of continuing his profession.

"38. On March 31, 1992, Dr. Schell opined that he could find no reason why Mr. Jenkins could not return to his practice of law and, 'from a psychological standpoint I see no reason that he should not be allowed to return to his practice.'

"39. Respondent admitted his mistakes, none of which were out of a selfish motive or which resulted in monetary gain to him.

"40. Mr. Jenkins expressed his sorrow at having caused injury to his clients and exhibited remorse during his testimony for the troubles he had caused them.

"41. Since the date he was put on disability inactive status by the Kansas Supreme Court November 8, 1991, Respondent has not been engaged in the practice of law.

## "E. Recommendation of Discipline

"It is apparent that Respondent has violated numerous provisions of the Model Code of Professional Responsibility on many occasions and that his conduct has resulted in great financial and emotional loss and hardship to his clients. Without considering the aggravating or mitigating circumstances, it is beyond any reasonable question that Respondent should be disbarred. The aggravating circumstance of the previous informal admonition merely reinforces that decision.

"The panel unanimously believes that some weight should be afforded to the mitigating circumstances and has struggled with how to attempt to quantify that weight.

"The panel has reviewed and considered the letters of Dr. Schell. The panel found Dr. Schell's letters to be of assistance, although the panel was somewhat skeptical that in October 1991 the diagnosis of Mr. Jenkins was that, 'he is not capable of continuing his profession,' while a short five months later the diagnosis was that, 'I find no reason why Mr. Jenkins could not return to practice of law at this time . . . from a psychological standpoint I see no reason why he should not be allowed to return to his practice.'

"The panel assumes it likely that a lawyer suffering from depressive mental illness might be incapable of performing his work diligently while keeping his clients properly informed; on the other hand, the panel wonders if this type

mental illness could explain legal work being performed that was of questionable incompetence. Suffice it to say that the panel is concerned by the lack of competence, repeatedly evidenced in the record before it.

"The panel is also mindful of the comments of the Kansas Supreme Court in the matter of Bradley A. Pistotnik, [254 Kan. 294, 864 P.2d 1166] (1993).

> 'The panel found Pistotnik's progress in therapy to be encouraging but reasoned that given Pistotnik's pattern of behavior, sufficient time has not elapsed to establish that he has permanently changed his behavior. Additionally, the panel emphasized that it could not ignore the series of Pistotnik's violations of the disciplinary rules and past discipline imposed. The panel determined that the violations must be considered as a whole rather than as isolated events of minor significance. We agree with the panel's characterization of Pistotnik's conduct.'

"In *Pistotnik* the court affirmed the hearing panel's recommendation of discipline by suspension of the practice of law for one year.

"It is the panel's view that the following discipline should be imposed upon Respondent.

"1. Suspension from the practice of law for one year from the date of this report.

"2. Submission of a plan of supervision and therapy to be developed by Mr. Jenkins and submitted to the Disciplinary Administrator, demonstrating that Respondent will obtain psychological counseling on an as-needed basis for the next two years.

"3. Retaking and successfully passing the Kansas State Bar Examination.

"4. Bringing current his continuing legal education hours for 1993-1994, and remaining current on continuing legal education hours as required in the future.

"5. Costs should be assessed against the Respondent.

"Finally, the panel notes that this Hearing Report is not dispositive of the matters facing Respondent, since Respondent will still be required to apply to the Kansas Supreme Court for an order lifting its order of November 8, 1991, transferring Respondent to disabled inactive status."

Jenkins did not file exceptions to the findings, conclusions, and recommendations as embodied in the final hearing report of the panel. At oral argument, Jenkins indicated that he had no desire to retake the Kansas Bar Examination, but stated he was ready and willing to do so.

## Standard of Review

"In *State v. Klassen*, 207 Kan. 414, 415, 485 P.2d 1295 (1971), we explained that we have a 'duty in a disciplinary proceeding to examine the evidence and determine for ourselves the judgment to be entered.' In *State v. Ziegler*, 217 Kan. 748, 755, 538 P.2d 643 (1975), this court stated that, although the report

of the disciplinary board 'is advisory only, it will be given the same dignity as a special verdict by a jury, or the findings of a trial court, and will be adopted where amply sustained by the evidence, or where it is not against the clear weight of the evidence, or where the evidence consisted of sharply conflicting testimony.' See *In re Farmer*, 242 Kan. 296, 299, 747 P.2d 97 (1987)." *In re Carson*, 252 Kan. 399, 406, 845 P.2d 47 (1993).

"It is well established that the panel's findings and recommendations are advisory only and are not binding on the court. *State v. Phelps*, 226 Kan. 371, 378-79, 598 P.2d 180 (1979); *State v. Johnson*, 219 Kan. 160, 546 P.2d 1320 (1976). It is the responsibility of this court to examine the evidence and determine for itself the discipline to be imposed. *State v. Klassen*, 207 Kan. 414, 415, 485 P.2d 1295 (1971)." *In re Smith*, 249 Kan. 227, 229, 814 P.2d 445 (1991).

"We may impose sanctions lesser or greater than those recommended. Supreme Court Rule 212(f) (199[3] Kan. Ct. R. Annot. [180]); see *In re Veith*, 252 Kan. 266, 272, 843 P.2d 729 (1992). In assessing discipline, aggravating and mitigating factors are to be considered. See *In re Kershner*, 250 Kan. 383, 391, 827 P.2d 1189 (1992); ABA Standards for Imposing Lawyer Sanctions (1991)." *In re Keithley*, 252 Kan. 1053, 1055, 850 P.2d 227 (1993).

## Discussion

We find there is clear and convincing evidence establishing the violations determined by the panel as to each of the complaints. The misconduct in the instant case does not involve an isolated instance or an inadvertent error. The panel itself was concerned with the repeated evidence of incompetence set forth in the record. The panel stated that without consideration of the aggravating or mitigating circumstances, "it is beyond any reasonable question" that respondent should be disbarred. Several of respondent's clients suffered emotional and financial hardship. Respondent repeatedly failed to follow through on his responsibilities as a lawyer. He either was unable or refused "to accept and perform the obligations of the legal profession." *State v. Dixon*, 233 Kan. 465, 472, 664 P.2d 286 (1983). Despite the hearing panel's recommendation of suspension from the practice of law for one year, we are of the opinion that respondent should be indefinitely suspended. Respondent shall make full and complete financial restitution to those injured by his professional misconduct as set forth in the panel's finding of facts for Cases Nos. B4984, B5120, and B5295. We shall consider additional require-

ments if respondent seeks reinstatement under Supreme Court Rule 219 (1993 Kan. Ct. R. Annot. 192).

IT IS THEREFORE ORDERED that Howard L. Jenkins, II, be suspended from the practice of law indefinitely in accordance with Supreme Court Rule 203(a)(2) (1993 Kan. Ct. R. Annot. 162) for his violations herein.

IT IS FURTHER ORDERED that although Howard L. Jenkins, II, has been on inactive status since November 8, 1991, he shall comply with Supreme Court Rule 218 (1993 Kan. Ct. R. Annot. 187).

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of the proceeding be assessed to respondent.