**MISSOURI INSURANCE GUARANTY ASSOCIATION, Respondent,**

v.

**WAL-MART STORES, INC., Appellant.**

No. 58544.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 4, 1991.

F. Douglas O'Leary, Christiana Rush, St. Louis, for appellant.

Joseph M. Kortenhof, St. Louis, for respondent.

STEPHAN, Judge.

The Missouri Insurance Guaranty Association ("MIGA") filed a petition for declaratory judgment against Wal–Mart Stores, Inc. ("Wal–Mart") seeking to recover amounts it had paid on workers' compensation claims in connection with policies of insurance issued to Wal–Mart by Transit Casualty Company, ("Transit") now insolvent. MIGA also sought a declaration that it had no obligation to administer, handle, pay or continue to defend the claims under the Transit policies. The trial court entered an order granting MIGA's motion for summary judgment and assessing damages of $294,657.44, plus interest. Wal–Mart appeals from this judgment. We affirm.

In May 1982, Carlos Miro entered into an agency agreement with Transit. *Wal–Mart Stores, Inc. v. Crist*, 855 F.2d 1326, 1328 (8th Cir.1988).[1] The agreement authorized Miro to issue and place insurance policies on behalf of Transit. He was supplied blank insurance forms for this purpose. *Id.*

In late 1982 Wal–Mart sought proposals for workers' compensation insurance. *Id.* Miro offered to provide insurance covering all Wal–Mart employees at a flat and guaranteed premium of $3,500,000.00. This offer was accepted. *Id.* at 1329. The policy

indicated that the premium had been computed in accordance with standard manual rates on file with appropriate regulatory agencies in the eighteen states in which Wal–Mart had employees. *Id.* The rates were multiplied by the estimated payroll for each job classification to reach an aggregate premium. *Id.* If actual payroll figures had been used, however, the premium would have been much higher than the agreed on $3,500,000.00. The payroll figures were, therefore, falsified and reduced to reach the appropriate figure. *Id.* Both parties were aware that the estimated payroll was depressed, but neither took any action to amend the figures. *Id.* On February 1, 1984 a similar policy was issued for the same premium. Payroll figures utilized in this renewal policy were also depressed. *Id.*

In late 1984 problems began to surface. Claims on the Wal–Mart policies turned out to be well beyond expectations. Transit learned that Miro's captive reinsurers, with whom the entire risk on the Wal–Mart policies had been reinsured, had stopped paying claims. *Id.* at 1329–1330. Transit terminated Miro's agency agreement and demanded additional premium payments from Wal–Mart. *Id.* at 1330.

Upon receipt of this demand Wal–Mart filed suit in the United States District Court in Arkansas, seeking enforcement of the agreement entered into with Miro. *Id.* Transit answered alleging that the agreement was unenforceable and contrary to law. Transit also counterclaimed for nearly $20,000,000.00 in additional premiums it claimed Wal–Mart owed pursuant to the terms of the policy.

On or about November 25, 1985, Transit was declared insolvent. Lewis R. Crist, director of the Missouri Division of Insurance, was appointed receiver for Transit.

The district court found that Miro had exceeded his authority, that the agreement with him was illegal and unenforceable, but still ordered Wal–Mart to pay Transit the

---

1. MIGA's claim is based on a determination by the federal court that there was an unenforceable contract. We borrow the statement of facts from Judge Beam of the Eighth Circuit Court of Appeals.

additional premiums it owed, plus interest. *See, Wal–Mart Stores, Inc. v. Crist,* 664 F.Supp. 1242 (W.D.Ark.1987).

Wal–Mart appealed and the Eighth Circuit reversed. It held that the agreement and the policies were illegal. *Crist,* 855 F.2d at 1333–1334. It further held "[i]f the premium term of the contract is illegal and unenforceable ... the coverage portion of the contract is necessarily unenforceable as well." *Id.* at 1334. It determined that because the parties were *in pari delicto,* equally culpable, Wal–Mart was not required to pay the additional premiums. *Id.* at 1335.

Subsequent to Transit's insolvency, but prior to the Eighth Circuit decision in *Crist,* Wal–Mart's Missouri workers' compensation claims were assigned to MIGA pursuant to Section 375.785, RSMo 1986. MIGA undertook the administration of the claims until it was informed of the Eighth Circuit decision in *Crist.* At that time, MIGA notified Wal–Mart that it would henceforth deny coverage under the Transit policies.

MIGA commenced this action on October 11, 1988. It sought a declaration that it was not obligated to pay or take any action on any claims under the policies declared illegal and unenforceable in *Crist.* It further requested that previous payments made pursuant to these policies be returned.

On May 31, 1989, MIGA filed its motion for summary judgment with the supporting affidavit of Paul H. Dygard, MIGA's executive director. In his affidavit Mr. Dygard stated that Wal–Mart's workers' compensation claims and files were forwarded to MIGA immediately after Transit's insolvency. MIGA undertook the handling of the claims, eventually paying out $238,649.98[2] in the administration, handling and payment of claims, in the mistaken belief that the policies were valid and enforceable.

Wal–Mart filed its own motion for summary judgment on February 15, 1990, along with the affidavit of Ronald A. Williams, corporate counsel for Wal–Mart.

The affidavit stated that Wal–Mart had been prejudiced by MIGA's actions and that, if MIGA had informed Wal–Mart it intended to deny coverage or had reserved its right to do so, "Wal–Mart would have made different arrangements for handling, administering and covering claims ... that were covered by the Transit policies."

On April 26, 1989, the trial court entered its order granting MIGA's motion for summary judgment and denying Wal–Mart's motion. It found that, pursuant to *Crist,* the policies were illegal, void and unenforceable, and that Wal–Mart was collaterally estopped from relitigating their validity. It further held the claims under these policies were not "covered claims" under a valid and legally enforceable policy of insurance. MIGA was, therefore, never obligated to pay these claims and should be reimbursed for past expenditures. The court ordered Wal–Mart to pay $294,657.44, plus interest, to MIGA. This appeal followed.

In its first point Wal–Mart argues that the trial court erred in granting MIGA's motion for summary judgment to recover past payments. It asserts that MIGA and Transit were in privity and that MIGA is, therefore, bound by the ruling in *Crist.* Further, the claims presented to and handled by MIGA were covered claims within the meaning of Section 375.785, RSMo 1986.

Summary judgment is appropriate only if no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Rule 74.-04(c); *Landoll by Landoll v. Dovell,* 778 S.W.2d 846, 848 (Mo.App.1989). When reviewing a ruling on a motion for summary judgment we scrutinize the record in the light most favorable to the party against whom the motion was filed, according to that party all reasonable inferences which may be drawn from the evidence. *Gast v. Ebert,* 739 S.W.2d 545, 546 (Mo. banc 1987). The burden is on the party moving for summary judgment to demonstrate that there is no genuine issue of fact. *Id.* An order of summary judgment, however, will

**2.** MIGA's petition was thereafter amended to reflect a pay out amount of $294,657.44.

not be set aside on review if supportable on any theory. *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 243 (Mo. banc 1984).

Wal–Mart's argument is that MIGA is collaterally estopped from recovering past payment under the policies pursuant to *Crist* because it was in privity with Transit. The doctrine of collateral estoppel applies when, once a court has determined an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first cause. *Bi–State Dev. Agency v. Whelan Security Co.*, 679 S.W.2d 332, 335 (Mo.App.1984). The object of this doctrine is to relieve the parties of the cost and vexation of multiple litigations, to conserve judicial resources and to encourage reliance on adjudication by avoiding inconsistent decisions. *Shaffer v. Terrydale Management Corp.*, 648 S.W.2d 595, 608 (Mo.App.1983). Collateral estoppel precludes the same parties, or those in privity, from relitigating issues which have been previously litigated. *Nelson v. Missouri Div. of Family Services*, 688 S.W.2d 28, 30 (Mo.App.1985).

■ Four factors are to be considered when determining if the application of collateral estoppel is appropriate. They are: 1) whether the issue decided in the prior adjudication was *identical* with the issue presented in the present action; 2) whether the prior adjudication resulted in a judgment on the merits; 3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and 4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *Sunshine Realty Corp. v. Killian*, 702 S.W.2d 95, 98–99 (Mo.App.1985), quoting *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713, 719 (Mo. banc 1979). (emphasis in original).

The issue decided in *Crist* was the validity of the insurance policies. *Crist* determined that the policies were illegal and that neither party could gain any relief from the transaction, because they were *in pari de-*

*licto. Crist*, 855 F.2d at 1334. Wal–Mart argues that MIGA cannot obtain relief because it was in privity with Transit.

■ Parties are in privity for collateral estoppel purposes when the interests of the nonparty are so closely related to the interests of the party, that the nonparty can be fairly considered to have had his day in court. *Johnston v. Allis–Chalmers Corp.*, 736 S.W.2d 544, 549 (Mo.App.1987). Whether the parties are in privity depends mostly on their relationship to the subject matter of the litigation. *Clements v. Pittman*, 765 S.W.2d 589, 591 (Mo. banc 1989). Privity is not established simply because the parties are interested in the same question or in proving or disproving the same state of facts. *Id.*

■ Wal–Mart's privity argument is based on the fact that Transit's Receiver was Lewis R. Crist who was, at that time, Director of the Missouri Division of Insurance. MIGA's board of directors is subject to the supervision of the director of insurance. Section 375.785.5, RSMo 1986. The selection of MIGA's board of directors is approved by the director of insurance and he appoints new directors to fill vacancies. Section 375.785.6(1), RSMo 1986. Further, MIGA is subject to examination and regulation by the director of insurance and must report to him on an annual basis. Section 375.785.11, RSMo 1986. Wal–Mart provided as part of its motion for summary judgment, minutes of MIGA's board of directors meetings which indicate that the director of insurance, or an associate of his, attended the meetings.

We fail to see how this statutory scheme of administration establishes privity. It in no way indicates that MIGA's interests and the interests of Mr. Crist, as the receiver for Transit, were so closely related that MIGA can be said to have had the equivalent of its day in court. While both MIGA and Transit would be interested in monetary recovery from Wal–Mart, the theories on which either, acting in its own right, might be entitled to recover are different. *Pittman*, 765 S.W.2d at 591. Transit's theory of recovery was founded in contract, while MIGA's is statutory.

■ Nor do we find an identical issue, as MIGA's theory presupposes the *Crist* re-

sult; that the policies are invalid. MIGA's action was a step beyond what the earlier litigation decided. It is, therefore, not precluded from litigating its claim.

 Wal–Mart also argues that the claims MIGA handled were covered claims within the meaning of Section 375.785.3(2), RSMo 1986, and that payment on them was mandated by statute. The definition of a covered claim under the statute, and MIGA's obligation thereto, are at least no broader than the coverage provided by the underlying insurance policy. *King Louie Bowling Corp. v. Missouri Ins. Guar. Assoc.*, 735 S.W.2d 35, 40 (Mo.App.1987). *Crist* determined that the insurance policies were legally unenforceable and that they cover nothing. Therefore, there were no covered claims, and MIGA had no obligation to pay.

We find that the trial court did not err in granting summary judgment as MIGA was not in privity with Transit and can recover amounts it was not required to pay pursuant to the invalid insurance policies. Point I is denied.

 Wal–Mart next asserts that the trial court erred in granting MIGA's motion for summary judgment regarding MIGA's future obligations to insure Wal–Mart. It argues that *Crist* did not determine if MIGA was required to make future payments on covered claims.

We agree that *Crist* did not decide this specific issue. We held in Point I, however, that there were no covered claims within the meaning of the statute because the policies were illegal. Wal–Mart has not presented any viable reason why we should distinguish between past and future obligations, and we decline to do so. The insurance policies were illegal, unenforceable, and invalid and, therefore, cannot be the basis of any covered claim, past, present, or future.

 Wal–Mart also argues under this point that its employees should have been joined as parties to the litigation because they are clearly necessary to any proceeding which seeks to release MIGA from its obligations. Wal–Mart further argues that its employees have an interest because the

court does not know if Wal–Mart is presently solvent or will continue to be solvent.

Rule 52.04(a) states:

A person shall be joined in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest.

We find Wal–Mart's argument somewhat incredible. Wal–Mart would have us join all its employees because they might, someday, have a claim. Wal–Mart refers us to *Aetna Life Ins. Co. v. Litteer*, 621 S.W.2d 376 (Mo.App.1981), to support this proposition. There it was held that the estate of the deceased was a necessary party within the meaning of Rule 52.04(a) because the estate had a claim against the life insurance proceeds at issue. *Id.* at 379. The trial court there had no authority to proceed absent the joinder of such an indispensable party.

Employees of Wal–Mart who did not, or do not currently, have workers' compensation claims are not necessary to this litigation. Those who had, or currently have, claims are covered pursuant to statute. If Wal–Mart is uninsured it is primarily liable for workers' compensation claims. Section 287.300, RSMo 1986. We will not speculate on the future viability of Wal–Mart. We find no error in the trial court's order granting summary judgment regarding future claims or in failing to join Wal–Mart's employees. Point II is denied.

In its third point Wal–Mart asserts that the trial court erred in granting MIGA's motion for summary judgment because MIGA was estopped from recovering past payments. MIGA, it is argued, assumed control of Wal–Mart's insurance claims with knowledge that the *Crist* litigation was pending, without reserving any rights or putting Wal–Mart on notice that it would seek to recover payments.

**34**

Estoppel requires: 1) an admission, statement or act inconsistent with the claim later asserted and sued upon; 2) action by the other party on the faith of such admission, statement or act; and 3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement or act. *Brown v. State Farm Mut. Auto. Ins. Co.*, 776 S.W.2d 384, 386 (Mo. banc 1989). The prejudice required to invoke estoppel involves proof by Wal–Mart that it has suffered, or will suffer, an actual detriment if MIGA is permitted to withdraw as the substitute insurer. *DePriest v. State Farm Fire and Casualty Co.*, 779 S.W.2d 347, 350 (Mo.App.1989). The mere trouble and expense of bringing suit does not amount to the prejudice required to invoke the estoppel doctrine. *Id.*

The party asserting estoppel bears the burden of proving every fact by clear and satisfactory evidence. *Van Kampen v. Kauffman*, 685 S.W.2d 619, 625 (Mo.App.1985). One cannot set up another's act or conduct as the ground of an estoppel unless the one claiming it was actually misled or deceived by such act or conduct, nor can he set it up where he knew or had the same means of knowledge as the other as to the truth. *Id.*

Wal–Mart certainly had knowledge of the truth, that the policies were invalid, as it was a party in *Crist.* Further, Wal–Mart failed to show it was deceived or misled in any way. MIGA presented the affidavit of Paul Dygard which indicated that MIGA undertook the handling of the Transit claims under the mistaken belief that they were valid and legally enforceable. Wal–Mart argues that it changed its position to such a degree that it would be unjust to require it to pay restitution to MIGA. Wal–Mart asserts that when MIGA assumed the claims MIGA thereafter handled all administration, collection and payment on the claims; Wal–Mart had no control. Wal–Mart would have retained a different insurer if it had known that MIGA was going to stop handling the claims.

The general rule applied in cases of mistaken payment is that restitution will be granted when a mistaken payment is made under mistake of fact, but not when the payment is made under mistake of law. *Western Casualty & Surety Co. v. Kohm*, 638 S.W.2d 798, 800 (Mo.App. 1982). Restitution will not be granted to remedy a mistake of fact if the payee has so changed its position that it would be unjust to require restitution. *Id.*

Based on Wal–Mart's argument, an insurer would never be able to recover for mistaken payments to its insured. The insured would always be prejudiced because the insurance company retains this type of control in most cases. A result for Wal–Mart based on this argument would be fallacious.

Summary judgment was proper. MIGA has shown that its payments to Wal–Mart were made pursuant to the mistaken fact that the policies were legally enforceable. Wal–Mart's affidavits to the contrary contain legal conclusions, not facts, indicating that knowledge of the questionable legality of the policies was imputed to MIGA by law. Conclusory allegations are not sufficient to raise a question of fact in summary judgment proceedings. Rule 74.04(e); *Big Boys Steel Erection, Inc. v. Hercules Constr. Co.*, 765 S.W.2d 684, 687 (Mo.App. 1989). Estoppel was not proper because Wal–Mart failed to show it suffered actual detriment. Point III is denied.

Finally, Wal–Mart argues that the trial court erred in awarding damages on the motion for summary judgment because that is a question reserved for the jury and there was no evidence, other than hearsay, of the amount of damages.

Wal–Mart states that the damages figure in Dygard's affidavit was disputed in its response to MIGA's motion for summary judgment. It states:

MIGA asserts that Wal–Mart does not question the amounts paid. The answer is obvious. Wal–Mart has no knowledge of what was paid. It was not involved in those payments. MIGA had taken control of the files. There is clear law that a plaintiff in a lawsuit is not entitled to summary judgment on any damages issue and that the question of damages are [sic] for a jury or other finder of fact to

determine. If the Court needs authority on the point we will be glad to supply it.

■ When damages are shown by specific ascertainable values, and are uncontroverted, there is no reason why summary adjudication should not include the assessment of damages. *Smithey v. Davis*, 752 S.W.2d 486, 489 (Mo.App.1988); *Gal v. Bishop*, 674 S.W.2d 680, 684 (Mo.App.1984).

■ Wal–Mart has merely stated that it does not know how much MIGA paid out in claims. There is no contention that the amount is wrong or not ascertainable, only that Wal–Mart was not directly involved in the actual payments. This does not controvert MIGA's evidence.

Without a verified denial or counteraffidavit, the facts alleged in support of a motion for summary judgment are deemed admitted. *Smithey*, 752 S.W.2d at 489. Wal–Mart has not produced any fact which would alter the result. This omission is fatal to its contention. Point IV is denied.

The judgment is affirmed.

CRANDALL, C.J., and CRANE, J., concur.