In re Raymond Paul SCHWARTEN, and Susan Renee Schwarten, Debtors.

MARK TWAIN KANSAS CITY BANK, Plaintiffs,

v.

Raymond Paul SCHWARTEN, and Susan Renee Schwarten, Defendants.

No. 95–4105–SAC.
Bankruptcy No. 92–42199–7.
Adv. No. 93–7029.

United States District Court, D. Kansas.

Feb. 28, 1996.

**241**

Robert L. Lundblad, Kansas City, KS, Robert N. Calbi, Kansas City, MO, for Raymond P. Schwarten and Susan R. Schwarten.

Gregory M. Garvin, Neil S. Sader, Brown, Nachman & Sader, P.C., Kansas City, MO, for Mark Twain Kansas City Bank.

## MEMORANDUM AND ORDER

CROW, District Judge.

On December 2, 1992, Raymond Paul and Susan Renee Schwarten filed for protection under Chapter 7 of the Bankruptcy Code. In an adversary proceeding, the bankruptcy court granted Mark Twain Kansas City Bank's (Mark Twain) motion for summary judgment, finding that the Schwartens were collaterally estopped from relitigating the issue of whether they had committed fraud in obtaining a $100,000 loan from Mark Twain. Based upon that ruling, the bankruptcy court concluded that the Schwartens' debt to Mark Twain was nondischargeable under 11 U.S.C. § 523(a)(2)(A) or (B). The Schwartens timely appeal that decision of the bankruptcy court.

### Standard of Review

"The question of whether summary judgment was appropriately granted is generally a question of law to be reviewed de novo." *Miller v. Gentry,* 169 B.R. 715, 719 (D.Kan.1994), *aff'd,* 55 F.3d 1487 (10th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 305, 133 L.Ed.2d 210 (1995). *See Oulds v. Principal Mut. Life Ins. Co.,* 6 F.3d 1431, 1436 (10th Cir.1993) ("We review the grant of summary judgment by the district court de novo, apply the same legal standard to the evidence in the record as did the district court."). "This same standard applies when the district court, sitting as an appellate court to the bankruptcy court, reviews an order by the bankruptcy court granting summary judgment." *Miller,* 169 B.R. at 719; *see generally Citizens Nat'l Bank & Trust Co. v. Serel-*

*son (In re Burkart Farm & Livestock)*, 938 F.2d 1114, 1115 (10th Cir.1991) (in reviewing bankruptcy court decisions, appellate courts apply same standards of review that govern appeals in other cases).

■ A court grants a motion for summary judgment if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law governing the suit dictates which facts are material or not. *Id.* at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir.1988).

## Jurisdiction

■ At the outset, the court must address Mark Twain's contention that the court does not have jurisdiction to consider this appeal. Although the Schwartens' notice of appeal was timely filed, the notice of appeal was not signed by an attorney admitted to practice in the District of Kansas. Instead, the notice of appeal was signed by an attorney admitted to practice in Missouri. Apparently, the appellants' attorney from Missouri also signed the signature of their Kansas local counsel. In their reply brief the Schwartens explain:

> Counsel for Debtors is in total disagreement with the Bank's assertion that this Court does not have jurisdiction and takes great exception to this tactic taken by the Bank. The Notice of Appeal was "signed" by a member of the Bar of this Court. Mr. Calbi affixed the signature of Mr. Lunblad to the pleading with the consent

and permission of Mr. Lunblad. A document signed with the permission and consent of an attorney is adequate and proper and therefore, the Notice of Appeal was properly effectuated. Mr. Lunblad was not available to affix his own signature to the document when it needed to be filed and gave his consent and permission for Mr. Calbi to affix his signature for him.

Schwartens' Reply Brief (Dk. 13) at 1–2.

Contrary to the Schwartens' assertion, the rules of this district do not permit the procedure for signing pleadings which was practiced by their attorney in this case. D.Kan. Rule 83.5.4, titled "Appearance for a Particular Case," formerly D.Kan.Rule 404,[1] states as follows:

> (c) All pleadings or other papers signed by an attorney admitted pro hac vice shall also be signed by a member of the bar of this court in good standing who shall participate meaningfully in the preparation and trial of the case or proceedings to the extent required by the court. An attorney who applies for admission pro hac vice by doing so consents to the exercise of disciplinary jurisdiction by this court over any alleged misconduct that occurs during the progress of the case in which the attorney so admitted participates.

"Rule 404 [now Rule 83.5.4] requires an attorney who is a member of this court to sign all papers which are filed. The court knows of no rule or accepted practice which authorizes an attorney to sign by delegate or surrogate. The purpose of the rule suggests otherwise." *Zapata v. IBP, Inc.*, 162 F.R.D. 359, 360 (D.Kan.1995) (Magistrate Judge Rushfelt). Moreover, an attorney who has not reviewed the pleading to which his signature is affixed by proxy has not "meaningfully" participated in that document's preparation.

■ Notwithstanding this apparent violation of the rules of this district, the court finds that it has jurisdiction to consider this appeal. The primary purpose of Rule 83.5.4 is to provide a mechanism insuring that at-

---

1. Effective October 1, 1995, the District of Kansas adopted the "Rules of Practice of the United States District Court for the District of Kansas," superseding the then-existing rules. The redesignation of Rule 404(c) as Rule 83.5.4. effected no substantive change in the rule.

torneys practicing in this district are subject to the rules and discipline of this court. The rule serves the primary purpose of requiring compliance with the standards of professional conduct demanded by this court, including adherence to the requirements imposed by Fed.R.Civ.P. 11. Although the court in no way condones the procedure followed by appellants' counsel in this case, dismissal of their appeal on such grounds simply exacts too harsh a penalty. This admonition to counsel serves as an appropriate sanction. The court, in the exercise of its discretion under D.Kan.Rule 1.1,[2] finds the appellants' notice of appeal adequate and will consider the appellants' appeal on the merits.

### Summary of Uncontroverted Facts

The Schwartens are husband and wife. In 1990, the Schwartens were involved with a corporation called Sonic Technologies, Inc. Susan Schwarten was the sole shareholder and president. Ray Schwarten was the chief executive officer of the corporation and was apparently in charge of the company's day-to-day activities.

On March 8, 1990, Mark Twain extended a $100,000 line of credit to Sonic Technologies. The loan was evidenced by a promissory note, "due on demand, but if no demand is made then on June 6, 1990." Both Susan and Ray Schwarten executed personal guarantees for the promissory note. On March 12, 1990, Sonic Technologies borrowed $94,-249.79 on its line of credit with Mark Twain. Sonic Technologies failed to pay the note when due and the Schwartens did not honor their guarantees.

Sonic Technologies subsequently commenced a "lender liability"[3] lawsuit in Missouri state court against Mark Twain. In response, Mark Twain sought judgment against both Sonic Technologies and the Schwartens on several theories, including fraud or misrepresentation. The essence of Mark Twain's fraud claims was that Sonic Technologies and the Schwartens, in their written representations to the bank, had exaggerated the business' income, included assets which the business did not own or possess, and indicated that it had entered a joint venture agreement with two other companies. In short, Sonic Technologies and the Schwartens materially overstated the income and assets of their enterprise and the prospects for its success in the future. Mark Twain also alleged that Susan Schwarten made both oral and written fraudulent misrepresentations concerning her own personal assets.

In 1992, Mark Twain sought partial summary judgment on certain issues, including its fraud claims against Sonic Technologies and the Schwartens. In support of its first fraud claim (Fraud I), Mark Twain argued that Sonic Technologies and the Schwartens had overstated the net income of Sonic Technologies by $50,000. In support of its second claim of fraud (Fraud II), Mark Twain argued that Sonic Technologies and the Schwartens fraudulently misrepresented that a joint venture had been formed with two other companies when in fact one had not. On September 25, 1995, the state court issued an order which, *inter alia*, granted Mark Twain "[j]udgment against both Sonic Technology and the Schwartens for their fraud in inducing the bank to extend a line of credit." The state court's order does not include any additional findings of fact or conclusions of law. The state court subsequently made its order granting partial summary judgment final for purposes of appeal. The Schwartens have apparently appealed the judgment of the Missouri state court.

In the adversary proceeding before the bankruptcy court, Mark Twain sought and was granted summary judgment on its contention that the Schwartens were collaterally estopped from relitigating the issue of whether their debt to Mark Twain was dischargeable under § 523(a)(2)(A) or (B). The Schwartens' arguments notwithstanding, the

---

**2.** D.Kan.Rule 1.1 provides: "These rules shall govern the procedure in all proceedings before this court. They shall, in special cases, be subject to such modification as the court may deem necessary or appropriate to meet emergencies or to avoid injustice or great hardship."

**3.** "Breach of a commitment to lend or to continue funding has been used as a theory of recovery." *Dennis Chapman Toyota, Inc. v. Belle State Bank,* 759 S.W.2d 330, 333 (Mo.App.S.D.1988).

bankruptcy court concluded that they were collaterally estopped from relitigating the same issues decided by the Missouri state court:

> Since Mark Twain alleged facts sufficient to satisfy the requirements of either § 523(a)(2)(A) or (B), the debtors' alleged false representations both led the bank to extend the line of credit, and the state court necessarily concluded the debtors had committed at least one of the two fraudulent acts alleged, the state court's judgment would be nondischargeable under at least one of the two subsections.

May 31, 1995, Memorandum of Decision at 8.

## Arguments of the Parties

In their appeal to this court, the Schwartens contend that the bankruptcy court incorrectly concluded that they were collaterally estopped from relitigating the issue of whether they had committed fraud in obtaining the loan from Mark Twain. Synthesized, these are the arguments of the Schwartens in their appeal to this court:

(1) Mark Twain's claims were for "misrepresentations," not fraud, and therefore they are not collaterally estopped from litigating the issue of fraud in bankruptcy court;

(2) The elements of fraud in the Missouri court are not identical to the elements for finding fraud under the Bankruptcy Code and therefore collateral estoppel does not apply;

(3) Because the state court did not make specific findings of fact and conclusions of law, the bankruptcy court cannot give the Missouri state court's decision preclusive effect. Specifically, because it is impossible to discern the logic of the state court's ruling, i.e., under which theory of fraud were the Schwartens liable, it is improper to give its decision preclusive effect; [4]

(4) Because the Schwartens' were legally liable for the unpaid loan based upon their written guarantees, it was unnecessary for the state court to reach the issue of fraud, and therefore collateral estoppel does not apply; [5]

(5) The decision of the Missouri state court is not final.

Mark Twain responds, arguing that based upon the Missouri state court findings it is entitled to summary judgment. Mark Twain contends that it is clear that the prior state judgment for fraud satisfies the requirements of § 523(a)(2)(A) or (B). Although the state court did not make specific findings of fact and conclusions of law, Mark Twain contends that it has presented a sufficient record to demonstrate the basis of the state court's decision. In support of its motion for summary judgment in bankruptcy court, Mark Twain submitted, inter alia, a copy of the motion for partial summary judgment it submitted to the Missouri state court. Mark Twain contends that the balance of the Schwartens' arguments is meritless.

## Collateral Estoppel [6]

■ "By statute, federal courts must give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state in which the judgments were rendered." *Comanche Indian Tribe of Oklahoma v. Hovis,* 53 F.3d 298, 302 (10th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 306, 133 L.Ed.2d 210 (1995); *see* 28 U.S.C. § 1738.

Missouri law concerning the doctrine of collateral estoppel appears to be well-settled:

> "The doctrine of collateral estoppel applies when, once a court has determined an issue of fact or law necessary to its judg-

---

4. In their reply brief, the appellants state: "The main crux of the Debtors (sic) Appeal is that the state court made no specific findings of fact or conclusions of law. Because of the lack of these findings and the different standards for fraud and elements for fraud at both the state court level and the bankruptcy level collateral estoppel cannot be applied to debtors."

5. Specifically, the Schwartens argue: "The issue of misrepresentation was nothing more than win-

dow dressing in the lawsuit. It was there for punitive damages only."

6. "Collateral estoppel is also referred to as issue preclusion." *Curnutt v. Scott Melvin Transport, Inc.,* 903 S.W.2d 184, 191 (Mo.App.W.D.1995). *See Robinson v. Volkswagenwerk AG,* 56 F.3d 1268, 1272 (10th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 705, 133 L.Ed.2d 661 (1996).

ment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first cause." *Missouri Insurance Guaranty Association v. Wal–Mart Stores, Inc.*, 811 S.W.2d 28, 32 (Mo.App.E.D.1991). This doctrine is designed to relieve the parties of the cost and vexation of multiple litigations, to conserve judicial resources, and to encourage reliance on adjudication by avoiding inconsistent decisions. *Id.* Collateral estoppel precludes the same parties, or those in privity, from relitigating issues which have been previously litigated. *Id.*

Four factors must be considered when determining if the application for collateral estoppel is appropriate: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *Id.* *Thomas Berkeley Consulting Eng. v. Zerman*, 911 S.W.2d 692, 696 (Mo.App.E.D. 1995).

## Exceptions to Discharge

 One of the central purposes of the Bankruptcy Code is to provide a "procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Grogan v. Garner*, 498

U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). However, the protection of the Bankruptcy Code is not without limits, as it is intended to only afford relief to the " 'honest but unfortunate debtor.' " *Grogan*, 498 U.S. at 287, 111 S.Ct. at 659 (quoting *Local Loan Co.*, 292 U.S. at 244, 54 S.Ct. at 699).

 Two of the exceptions to discharge are relevant in this case. 11 U.S.C. § 523, titled "Exceptions to discharge," provides in pertinent part that debtors may not discharge any debt:

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [7]

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

"Section 523(a)(2) generally provides that debts for, among other things, extensions of credit obtained by implied or actual fraud are not dischargeable. Section 523(a)(2)(A) applies to such debts obtained by "false pretenses, a false representation, or actual fraud," but not to debts incurred by false financial statements. Section 523(a)(2)(B) covers debts obtained by false financial statements." *In re: Furio*, 77 F.3d 622, 623 (2nd

---

[7] "To prevail under § 523(a)(2)(A), the plaintiff must establish these elements: (1) the debtors made representations; (2) the debtors knew them to be false when made; (3) the debtors made them with the purpose and intent of deceiving the plaintiff; (4) the plaintiff relied on the representations; and (5) the plaintiff suffered a loss as a proximate result of the representations."

*In re Pressgrove*, 147 B.R. 244, 246–47 (Bankr. D.Kan.1992).

Section 523(a)(2)(B) expressly provides that to except a debt from discharge the creditor's reliance on the materially false statement must be "reasonable." In *Field v. Mans*, —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), the Supreme Court held that under § 523(a)(2)(A) the standard for excepting a debt from discharge as a fraudulent misrepresentation is not "reasonable reliance" by the creditor on the false representation but instead is the "less demanding standard" of "justifiable reliance" on the false representation.

Cir.1996). *See Field v. Mans,* —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (discussing history of §§ 523(a)(2)(A) and 523(a)(2)(B)). In *Grogan,* the Supreme Court held that the standard of proof for the dischargeability exceptions in § 523(a) is the ordinary preponderance of the evidence standard. 498 U.S. at 291, 111 S.Ct. at 661.

### Analysis

■ The court concludes that the Schwartens are collaterally estopped from relitigating the issue of fraud in bankruptcy court and that the bankruptcy court properly concluded that Mark Twain was entitled to summary judgment. The court will briefly address each of the Schwartens' arguments. As an overview to its ruling, the court notes that to the extent that the Schwartens are attempting to use this proceeding as an opportunity to collaterally attack the decision of the Missouri state court, such an assault is improper. Direct appeal to a Missouri appellate court is the proper avenue to attack that decision. Moreover, assuming that the decision of the Missouri court was somehow vulnerable to attack in this court, the Schwartens have failed to present any evidence which the court may consider in evaluating Mark Twain's motion for summary judgment which otherwise demonstrates the existence of a genuine issue of material fact which precludes summary judgment.

The Schwartens' contention that the Missouri state court improperly granted summary judgment to Mark Twain on claims of fraud when no such claims are stated in Mark Twain's "Second Amended Answer, Counterclaim and Third–Party Petition," is incorrect. Although Mark Twain's claims are not specifically denominated as fraud claims, it is clear that Mark Twain sought recovery based upon theories of fraudulent misrepresentation.

■ The court will next consider the Schwartens' contention that the elements of fraud under Missouri law are not the same as the elements necessary to establish fraud under § 523(a)(2)(A) or (B), and therefore this court should not give preclusive effect to the Missouri state court's decision. Under Missouri law, "[i]n a fraud action, the claimant must establish the following elements: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity, or his ignorance of its truth, (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of the falsity of the representation, (7) the hearer's reliance on the representation being true, (8) his right to rely thereon, and (9) the hearer's consequent and proximately caused injury. *Reeves v. Keesler,* 921 S.W.2d 16 (Mo.App.W.D.1996). "The party alleging fraud bears the burden of proof for each element of fraud and must satisfy that burden with clear and convincing evidence." *Citizens Bank of Appleton v. Schapeler,* 869 S.W.2d 120, 127 (Mo.App.W.D.1993).[8]

■ Although the Schwartens contend that these elements are different from the elements necessary to preclude discharge under the bankruptcy code, the court can discern no appreciable difference between the elements of the state and federal standards for each of Mark Twain's fraud claims which precludes summary judgment.[9] Despite the fact that the elements are broken down differently under Missouri law, the key aspects of fraud are substantively the same. Moreover, "[t]he principle of issue preclusion applies with equal force whether the second action is on the same or a different claim." *Consumers Oil Co. v. Spiking,* 717 S.W.2d

8. Mark Twain was therefore able to establish fraud by a higher evidentiary standard in state court than it would have been required to prove in bankruptcy court.

9. Under § 523(a)(2)(B)(ii), Mark Twain would be required to show that the materially false statement respected the debtor's or an insider's financial condition. An insider of an individual debtor includes "a corporation of which the debtor is a director, officer, or person in control." 11

U.S.C. § 101(31)(A)(iv). Such a finding would not have been necessary to the Missouri state court's decision that the Schwartens had committed fraud. However, because the Schwartens apparently concede that they were officers of Sonic Technologies this element of § 523(a)(2)(B) was therefore satisfied and summary judgment in favor of Mark Twain was properly granted.

245, 249 (Mo.App.W.D.1986). "Where an issue, essential to the judgment, is actually litigated and determined by a valid and final judgment, the determination is conclusive in a subsequent action on a different cause of action where both causes of action arose out of the same subject matter or transaction." *Id.*

■ Although specific findings of fact and conclusions of law would have proven helpful in this case, their absence in no way precludes the operation of collateral estoppel. "Where no findings of fact and conclusions of law had been requested by the parties, or made by the court, all fact issues are deemed found in accordance with the results reached." *Id. See Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1518 (9th Cir.1985) ("If a court does not make specific findings, the party [asserting collateral estoppel] must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action.... Necessary inferences from the judgment, pleadings and evidence will be given preclusive effect."). In the case at bar, although the Schwartens dispute the state court's ultimate conclusions, this court has a sufficient basis to determine whether collateral estoppel should be applied. No matter how the factual record before the court is diced, it is clear that the Schwartens are collaterally estopped from relitigating the issue of fraud.

Each debtor was found liable in state court of either or both of Mark Twain's Fraud I or Fraud II claims. Based upon that finding, each of the elements of either or both § 523(a)(2)(A) or (B) are satisfied. Each of the elements of § 523(a)(2)(A) is satisfied. At least one of the Schwartens made representations concerning Sonic Technologies' joint venture with two other companies, those representations were false, those representations were made for the purpose and with the intent to deceive Mark Twain, Mark Twain's reliance was justifiable, and Mark Twain suffered a loss as a result of the representation. The elements of § 523(a)(2)(B) are also satisfied. At least one of the Schwartens obtained credit by submitting a written statement about Sonic Technologies' net income, the statement was materially false, Mark Twain reasonably relied on that statement, and the statement was submitted with the intent to deceive. Based upon the record before the bankruptcy court and this court, each of these findings is implicit in the Missouri state court's decision granting Mark Twain's motion for partial summary judgment on its fraud claims against the Schwartens.

■ The court rejects the Schwartens' contention that the state court's finding of fraud was mere "window dressing." Under Missouri law, Mark Twain was entitled to pursue alternative theories of recovery. *See In re Estate of Daly*, 907 S.W.2d 200, 203 (Mo.App.W.D.1995) ("While Missouri law allows a party to plead alternative or inconsistent theories of recovery, Rule 55.10, the doctrine of election between inconsistent theories requires 'a party to elect between theories of recovery that are inconsistent ... before submitting the case to the trier of fact.'") (quoting *Whittom v. Alexander–Richardson Partnership*, 851 S.W.2d 504, 506–07 (Mo. banc 1993)); *Trien v. Croasdale Constr. Co., Inc.*, 874 S.W.2d 478, 480 (Mo.App.W.D. 1994) ("It is perfectly proper for a plaintiff to plead and to submit alternative theories for a single injury."). The Schwartens fail to demonstrate that there is any aspect of Missouri law which would preclude Mark Twain from prevailing under alternative theories that are not inconsistent, albeit that it could not recover duplicate damages under the alternative theories. *Id.* at 481 ("[O]ne may not recover duplicate damages; one is entitled to one recovery only."). Nor do the Schwartens identify any case law supporting their contention that collateral estoppel should not be applied under such circumstances.

■ Turning to the Schwartens' final argument, the fact that the Missouri state court's order granting Mark Twain's motion for partial summary judgment did not dispose of the entire case does not preclude summary judgment in this case on the issue of collateral estoppel. "Summary judgment is a judgment on the merits." *Consumers Oil*, 717 S.W.2d at 250 (citing *Dragna v. Auto Owner's Mutual Insurance Co.*, 687 S.W.2d 277, 279 (Mo.App.1985). "When a final judgment is rendered by a trial court, it consti-

tutes a final adjudication on the merits, even though it is appealed, and is therefore res judicata." *Consumers Oil,* 717 S.W.2d at 251 (citing *Empire Trust Co. v. Hitchcock,* 233 Mo.App. 581, 123 S.W.2d 565, 567 (1939)). The Missouri state court entered an order making its finding of fraud an appealable final order.

In sum, the bankruptcy court correctly concluded that the Schwartens are collaterally estopped from relitigating the issue of whether their debt to Mark Twain is dischargeable under § 523(a)(2)(A) or (B).

IT IS THEREFORE ORDERED that the bankruptcy court's May 31, 1995, memorandum of decision is AFFIRMED.