73 F.3d 262
 64 USLW 2401, 33 Fed.R.Serv.3d 1061
 RESOLUTION TRUST CORPORATION, as Receiver of Great Plains
Federal Savings and Loan Association, Plaintiff,
v.
B. Wayne DABNEY, an individual; Van Dyck, Hays, Dabney,
Pullins, Rivas & Kingsolver, P.C., a Professional
Corporation, Defendants-Appellees.
Robert E. Craddock, Jr.; Tom Colbert; Neysa L. Day,
Movants-Appellants.
 No. 94-6170.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 22, 1995.
 
 1
 Tom Colbert of Colbert & Associates, Oklahoma City, Oklahoma, Robert E. Craddock, Jr. of Dyer, James & Taylor, Memphis, Tennessee, for Movants-Appellants.
 
 
 2
 Before TACHA and BARRETT, Circuit Judges, and BROWN,* Senior District Judge.
 
 
 3
 WESLEY E. BROWN, Senior District Judge.
 
 
 4
 Attorneys for the Resolution Trust Corporation (RTC), Robert E. Craddock, Jr., Tom Colbert, and Neysa L. Day, (collectively, RTC Counsel), appeal from the district court's order imposing sanctions against them personally for violating Fed.R.Civ.P. 26(g) and 28 U.S.C. Sec. 1927.[1] We have jurisdiction under 28 U.S.C. Sec. 1291. We affirm the sanctions imposed on Craddock and Colbert, but vacate the sanction against Day for lack of procedural due process.[2]
 
 
 5
 The RTC, as receiver for Great Plains Savings and Loan Association (Great Plains), brought a breach of contract action against attorney B. Wayne Dabney, and his law firm, Van Dyck, Hays, Dabney, Pullins, Rivas & Kingsolver, P.C., (collectively, the defendants), asserting that the defendants improperly prepared a title opinion relied upon by Great Plains in making a loan to John Hudson, causing Great Plains' loan to Hudson to be unsecured.
 
 
 6
 A few weeks before trial, Colbert notified defendants that the RTC planned to call a witness, Gerald Mildfelt, whom Colbert had previously represented to defendants would not be called to testify. Appellant's App.Vol. I at 62-63, Vol. II at 303-04. As a result of the RTC's late change of plans, defendants were unable to take Mildfelt's deposition until two weeks prior to trial. During Mildfelt's deposition, Craddock instructed Mildfelt not to answer any questions unless Craddock allowed him to. Appellant's App. Vol II at 283. Craddock asserted that the questions asked by defendants might seek information protected by the work product privilege. The day after the deposition, Colbert issued a subpoena duces tecum ordering defendants to produce all the 500 title examinations performed by Dabney since 1975. Appellant's App.Vol. I at 133, 138, 139-41. As a result of these actions, defendants filed a motion to compel discovery and a separate motion to quash the subpoena duces tecum. In response, the RTC filed a motion for protective order regarding Mildfelt's deposition.
 
 
 7
 The district court granted the defendants' motion to compel and motion to quash, and denied the RTC's motion for protective order. The district court found that the positions taken by Craddock and Colbert in connection with these pleadings were not substantially justified and awarded defendants' attorney fees and expenses under Fed.R.Civ.P. 37(a)(4) for all activity related to these discovery disputes.
 
 
 8
 The district court further found that Colbert violated Fed.R.Civ.P. 26(g) by signing the subpoena duces tecum and that Craddock violated 28 U.S.C. Sec. 1927 by instructing Mildfelt not to answer questions during his deposition. The district court found that Craddock's and Colbert's actions were not consistent with the requirements of the Federal Rules of Civil Procedure or warranted by existing law. It found that Craddock's and Colbert's actions were interposed for the improper purposes of harassment, unnecessary delay, and to increase the cost of litigation by multiplying the proceedings unreasonably and vexatiously in violation of Fed.R.Civ.P. 26(g) and 28 U.S.C. Sec. 1927.
 
 
 9
 The district court then requested briefs from both parties addressing "any factors appropriate to the Court's determination of the amount of a proper sanction that will deter future misconduct." Appellants' Br., Tab 2 at 5. It indicated it would base its sanctions on the amount of time it had put into the discovery matter. Id. at 4-5, Appellant's App.Vol. II at 314-15. After consideration of these briefs, the district court imposed sanctions of $3,000 each against Colbert and Craddock. The district court also sanctioned Day, an in-house lawyer for the RTC, personally for $500 because she filed an affidavit stating she had instructed Craddock not to let Mildfelt answer questions that sought work product. The district court ordered all of these sanctions be paid to the clerk of the court.
 
 I. Sanctions Against Craddock
 
 10
 Section 1927 provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys fees reasonably incurred because of such conduct." Sanctions under Sec. 1927 are appropriate "for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir.1987). We review the district court's decision to impose sanctions under Sec. 1927 under an abuse of discretion standard. Griffen v. City of Okla. City, 3 F.3d 336, 342 (10th Cir.1993).
 
 A.
 
 11
 Craddock first contends the sanction against him for instructing Mildfelt not to answer questions during deposition was an abuse of discretion because his assertion of the work product privilege was proper. Mildfelt was an RTC investigator responsible for evaluating whether certain loans were properly underwritten by Great Plains. Craddock contends the questions he instructed Mildfelt not to answer sought information concerning the RTC Counsel's mental impressions, legal strategies and investigative methods with respect to their evaluation of potential claims against Great Plains' officers and directors.
 
 
 12
 A party may instruct a deposition witness not to answer when necessary to preserve a privilege. Fed.R.Civ.P. 30(d)(1). The work product privilege protects against disclosure of the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed.R.Civ.P. 26(b)(3). The party asserting a work product privilege as a bar to discovery must prove the doctrine is applicable. See Barclaysamerican Corp. v. Kane, 746 F.2d 653, 656 (10th Cir.1984). A mere allegation that the work product doctrine applies is insufficient. See Peat, Marwick, Mitchell & Co. v. West, 748 F.2d 540, 542 (10th Cir.1984), cert. dismissed, 469 U.S. 1199, 105 S.Ct. 983, 83 L.Ed.2d 984 (1985).
 
 
 13
 Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product. Feldman v. Pioneer Petroleum, Inc., 87 F.R.D. 86, 89 (W.D.Okla.1980). Thus, work product does not preclude inquiry into the mere fact of an investigation.
 
 
 14
 Under the plain language of Fed.R.Civ.P. 30(d)(1), counsel may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to suspend a deposition in order to present a motion under Fed.R.Civ.P. 30(d)(3). It is inappropriate to instruct a witness not to answer a question on the basis of relevance. Here, Craddock told defendants' counsel he wouldn't allow Mildfelt to testify about anything he did in his investigative process because the RTC was only tendering Mildfelt as a witness to testify about damages and document custody. Appellant's App.Vol. II at 282, 286. Before defendants' counsel even asked any questions about Mildfelt's investigation of loans, Craddock also told defendants' counsel, and warned Mildfelt, he would not allow any questions relating to any RTC investigation. Id. at 280-81.
 
 
 15
 Craddock also instructed the witness not to answer any questions unless Craddock first allowed him to answer, making a blanket work product objection to an entire line of questioning. Id. at 283. Craddock instructed Mildfelt not to answer questions which clearly did not call for work product material, such as whether Mildfelt reviewed the Hudson loan to determine whether it was properly underwritten; whether Mildfelt determined if the Hudson loan had been properly underwritten; whether Great Plains' board of directors had approved the Hudson loan; what responsibilities a savings and loan president and lending officer have with respect to making loans; and the type of information a bank would want about a borrower before making a loan. Id. at 283-84, 286-88.
 
 
 16
 Craddock did not meet his burden of proving that each question he instructed Mildfelt not to answer called for work product. Even if Craddock believed some of the questions were protected by the work product doctrine, that does not excuse his blanket instruction not to answer or his instructions not to answer questions which did not seek work product material.
 
 
 17
 Craddock relies, as he did at the deposition, upon a district court bench ruling in Resolution Trust Corporation v. Conner, No. CIV-92-506-R (W.D.Okla. July 9, 1993) (transcript of bench ruling on motion for protective order) as support for his assertion of the work product privilege. Although the district court in Conner did grant a limited protective order with respect to RTC investigators, it clearly does not support Craddock's assertion of the privilege in the Mildfelt deposition. The district court in Conner ruled the deposing counsel was "certainly free at the deposition to inquire about the scope of [the RTC investigators'] investigation." Appellants' Br., Tab 12 at 14. It is precisely such factual inquiries that Craddock refused to permit Mildfelt to answer. Moreover, Craddock and Day admit they believed prior to the deposition, in reliance on Conner, that the work product privilege might foreclose certain lines of questioning. Thus, the proper procedure was to apply to the court for a pre-deposition protective order, as called for by the rules of civil procedure, and as was done in the Conner case. See Fed.R.Civ.P. 26(c).
 
 
 18
 The record supports the district court's conclusion that Craddock's instructions not to answer were unjustified. Therefore, it was not an abuse of discretion to sanction Craddock.
 
 B.
 
 19
 Craddock next contends the district court failed to identify the basis for the amount of the sanction it ordered paid to the court. Specifically he argues there could be no "excess costs" because the district court had already awarded defendants their attorney fees under Fed.R.Civ.P. 37(b).
 
 
 20
 "When a court imposes sanctions under 28 U.S.C. Sec. 1927 ... it must sufficiently express the basis for the sanctions imposed to identify the excess costs reasonably incurred by the party to whom they will be due." Braley, 832 F.2d at 1513. Specific findings allow the court to identify the costs arising from the objectionable conduct, afford the sanctioned party notice and an opportunity to respond, and permit an appellate court to review the district court's decision. Id.
 
 
 21
 Here, the district court's final sanction order did not specify the basis of the amount of the sanction it ordered paid to the court. However, it is clear from its initial bench ruling and written order giving notice it would impose sanctions that it based the amount of the sanction on the time it spent on the discovery dispute. Appellant's Br., Tab 2, at 4; Appellant's App.Vol. II at 314-15.
 
 
 22
 "Excess costs" recoverable under 28 U.S.C. Sec. 1927 include only those enumerated in 28 U.S.C. Sec. 1920, which lists the items that ordinarily may be taxed to a losing party. Roadway Express, Inc., v. Piper, 447 U.S. 752, 757-61, 100 S.Ct. 2455, 2459-62, 65 L.Ed.2d 488 (1980). Neither Sec. 1927 nor Sec. 1920 include wasted judicial time as an "excess cost." Therefore, sanctions under Sec. 1927 cannot be based upon the court's time or upon wasted judicial resources. See Blue v. United States Dep't of Army, 914 F.2d 525, 548 (4th Cir.1990), cert. denied, 499 U.S. 959, 111 S.Ct. 1580, 113 L.Ed.2d 645 (1991).
 
 
 23
 Nevertheless, even if it were error for the district court to base its sanction under Sec. 1927 on the time it spent on the discovery dispute, the sanction can be upheld under the court's inherent power to impose a variety of sanctions to regulate its docket, promote judicial efficiency and deter frivolous filings. See Chambers v. NASCO, Inc., 501 U.S. 32, 50, 111 S.Ct. 2123, 2135-36, 115 L.Ed.2d 27 (1991) (recognizing the inherent power of courts to sanction conduct abusive of the judicial process and rejecting arguments that statutory sanctioning powers displace this inherent power); Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd.), 40 F.3d 1084, 1089 (10th Cir.1994).[3]
 
 
 24
 We recognized the court's inherent power to impose a sanction payable to the court in In re Baker, 744 F.2d 1438 (10th Cir.1984)(in banc), cert. denied, 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985). We noted that while "the cost of the court's inconvenience is [not] a precise measure to be routinely awarded in each and every case of unwarranted delay ..., we do not think that cognizance of the costs imposed upon the judicial system are irrelevant in determining the seriousness and extent of the sanction appropriate in particular cases." Id. at 1442.
 
 
 25
 The district court gave notice to RTC Counsel that it intended to impose sanctions based upon the waste of judicial time and the cost to the taxpayer, thus giving them notice and an opportunity to respond. Its findings were adequate to enable this court to determine that the amount of the sanctions were based on the district court's estimate of the time it spent on the discovery disputes, thereby permitting meaningful appellate review. See Braley, 832 F.2d at 1513; see also Optyl Eyewear Fashion Int'l Corp. v. Style Cos., 760 F.2d 1045, 1051 (9th Cir.1985) (a district court's failure to make express findings does not require a remand if a complete understanding of the issues may be had from the record). Accordingly, the district court's sanction against Craddock was not an abuse of its discretion.
 
 II. Sanction Against Day
 
 26
 Day contends the district court erred in imposing a sanction upon her because it failed to state any basis for the sanction. The district court stated that the sanction was imposed "by virtue of the admissions" in the affidavit she filed in response to the district court's order that it intended to impose sanctions. Day stated in her affidavit that she determined prior to Mildfelt's deposition that certain areas of inquiry could be protected by the work product privilege, that she was present at Mildfelt's deposition and that she requested Craddock to direct Mildfelt not to answer questions that would invade the work product privileges of the RTC. Appellant's App.Vol. 1 at 210-11.
 
 
 27
 Although Day did not raise the issue, we conclude that the district court failed to provide her with adequate notice of the sanction. A party facing the possible assessment of costs, expenses or attorney fees has a due process right to notice that such sanctions are being considered by the court and a subsequent opportunity to respond. Braley, 832 F.2d at 1514. An opportunity to be heard does not require an oral or evidentiary hearing on the issue; the opportunity to fully brief the issue is sufficient to satisfy due process requirements. White v. General Motors Corp., 908 F.2d 675, 686 (10th Cir.1990), cert. denied, 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991).
 
 
 28
 Here, Day was not the subject of the defendants' request for sanctions or the district court's original order finding Craddock's and Colbert's actions sanctionable. Craddock filed Day's affidavit with the court to demonstrate that his conduct at Mildfelt's deposition was at Day's instructions. In light of this response, the district court sua sponte sanctioned Day as well. Day had no prior notice that sanctions were being considered against her and therefore, she had no ability to respond prior to the imposition of sanctions. Accordingly, the district court erred in imposing a sanction against Day without affording her due process. See G.J.B. & Assoc., Inc. v. Singleton, 913 F.2d 824, 830 (10th Cir.1990) (district court's error in failing to provide party with required due process constituted an abuse of discretion, requiring remand). On remand, the district court must afford Day with the requisite due process if the court intends to impose sanctions on Day.
 
 III. Sanctions Against Colbert
 
 29
 Colbert contends the imposition of sanctions against him was an abuse of discretion because the subpoena duces tecum was permissibly issued under Fed.R.Civ.P. 45, which permits the issuance of a subpoena duces tecum compelling a person to produce documents in conjunction with a subpoena to appear at trial. We review the district court's imposition of sanctions under Fed.R.Civ.P. 26(g) for an abuse of discretion. Portales Nat'l Bank v. Smith (In re Byrd, Inc.), 927 F.2d 1135, 1137 (10th Cir.1991).
 
 
 30
 The district court found that the RTC's subpoena duces tecum sought discovery well after the deadline imposed by its scheduling order issued pursuant to Fed.R.Civ.P. 16. Appellant's Br., Tab 2 at 2-3; Appellant's App.Vol. II at 306. We cannot determine whether the subpoena duces tecum violated the district court's discovery scheduling order because RTC Counsel did not include the order as part of the record on appeal. Accordingly, we must affirm the district court's conclusion that the subpoena duces tecum sought untimely discovery of documents which should have been obtained through the normal discovery process within the discovery deadlines imposed by the court's scheduling order. See Deines v. Vermeer Mfg. Co., 969 F.2d 977, 979-80 (10th Cir.1992) (holding that this court must affirm if the record is insufficient to permit assessment of appellant's claims of error).
 
 
 31
 We also cannot review Colbert's contention that the district court erred when it found the subpoena duces tecum sought documents previously requested by the RTC, a finding it took into consideration in imposing the sanction. The district court found the RTC had requested the same documents "back in October [1993]." Appellant's App.Vol. II at 306. Colbert contends this was error because the documents were not requested in its first request for production, which was the subject of a discovery dispute before the court in October 1993. Appellant's App.Vol. I at 23-29; Vol. II at 568. However, the district court docket report indicates the RTC also requested Dabney to produce documents at his deposition, which request was held in abeyance by the district court in October 1993. Appellant's App.Vol. II at 568. This document request was not made part of the record on appeal and we cannot determine whether it requested the same documents requested by the subpoena duces tecum. Accordingly, we must again assume the district court's finding was correct.
 
 
 32
 Moreover, the district court did not abuse its discretion in concluding that the subpoena duces tecum was interposed for purposes of harassment, unnecessary delay and increase in the cost of litigation. Having reviewed the record, we conclude that the untimely request could only have been intended to harass defendants. Colbert's contention that he did not become aware of his need for the title examinations until after Dabney's deposition does not justify waiting three months, then requesting them on the eve of trial. Thus, we conclude the district court did not abuse its discretion in sanctioning Colbert.
 
 
 33
 The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED as to Craddock and Colbert and REVERSED as to Day and REMANDED for further proceedings.
 
 
 
 *
 Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 After the Appellant's brief was filed, the parties stipulated to a dismissal of the appeal "as to all matters except the imposition of sanctions against Appellants Robert Craddock, Tom Colbert, and Neysa Day." Agreed Order Correcting Stipulation to Dismiss, filed Nov. 8, 1994. Defendants have not filed a brief
 
 
 [2]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [3]
 We may affirm the district court's judgment on grounds not relied upon by the district court if supported by the record. In re Courtesy Inns, 40 F.3d at 1087