**BIOCORE MEDICAL TECHNOLOGIES, INC., Plaintiffs,**

v.

**Hamid KHOSROWSHAHI and, Margaret Callaci, Defendants.**

**Hamid KHOSROWSHAHI and, Margaret Callaci, Plaintiffs,**

v.

**BIOCORE, INC., et al., Defendants.**

**Nos. Civ. A. 98–2031–KHV, Civ. A. 98–2175–KHV.**

United States District Court, D. Kansas, Kansas City Division.

Sept. 4, 1998.

Ruth M. Benien, Benien Law Offices, Chtd., Kansas City, KS, pro se.

Thomas A. Butler, Butler, Fitzgerald & Potter PC, New York City, pro se.

Timothy F. Butler, New York City, pro se.

Maragaret Callaci, Tarrytown, NY, pro se.

Daniel B. Denk, Joseph W. Hemberger, Michael M. Shultz, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for plaintiff.

Hamid Khosrowshahi, Tarrytown, NY, pro se.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on plaintiffs' *Motion To Disqualify Attorney Timothy F. Butler* (Doc. # 140) filed June 29, 1998 and plaintiffs' *Supplement To Motion and Memorandum In Support Of Motion To Disqualify Attorney Timothy F. Butler* (Doc. # 155), filed July 2, 1998. Plaintiffs allege that Butler has violated Rules 3.4(b), 4.2 and 8.4(g) of the Kansas Model Rules of Professional Conduct ("MRPC"), Canon 9 of the Canons of Professional Responsibility ("CPR"); Rules 5(d) and 45(b)(1) of the Fed-

eral Rules of Civil Procedure; and D.Kan. Rules 26.3 and 83.5.4.

## STANDARD OF REVIEW

■ The Court has the power to disqualify counsel at its discretion for violations of professional standards of ethics. *E.E.O.C. v. Orson H. Gygi Co., Inc.,* 749 F.2d 620, 621 (10th Cir.1984); *Brown Mackie College v. Graham,* 1989 WL 48478 (D.Kan. Apr. 25, 1989) (NO. CIV.A.88–2220–S). Ethical violations do not automatically trigger disqualification. *Chapman Engineers v. Natural Gas Sales Co.,* 766 F.Supp. 949, 954 (D.Kan.1991). Because disqualification affects more than merely the attorney in question, the Court must satisfy itself that this blunt remedy serves the purposes behind the ethical rule in question. *Koch v. Koch Indus.,* 798 F.Supp. 1525, 1530 (D.Kan.1992).

The Federal Rules of Civil Procedure permit disqualification of counsel as a sanction for violations of the Federal Rules. *See Lelsz v. Kavanagh,* 137 F.R.D. 646, 655 (N.D.Tex.1991). At its discretion, for violations of local rules, the Court can also apply the sanctions authorized under the Federal Rules of Civil Procedure. D.Kan. Local Rule 11.1(b), (c). In addition, the Court's inherent power to disqualify counsel at its discretion is not supplanted by the federal rules. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

■ The Court must determine a motion to disqualify counsel by measuring the facts of the particular case. *Beck v. Board of Regents of State of Kan.,* 568 F.Supp. 1107, 1110 (D.Kan.1983). The moving party must show proof that is more than mere speculation and sustains a reasonable inference of a violation. *Koch,* 798 F.Supp. at 1530–31. The essential issue is whether the alleged misconduct taints the lawsuit. *Id.* The Court should not disqualify unless "the offending attorney's conduct threatens to 'taint the underlying trial' with a serious ethical violation." *Field v. Freedman,* 527 F.Supp. 935, 940 (D.Kan.1981). Because the interests

to be protected are critical to the judicial system, the Court should resolve doubts in favor of disqualification. *Id.* The Court must balance several factors, however, including society's interest in ethical conduct, defendants' right to choose their counsel, and the hardship which disqualification would impose on the parties and the entire judicial process. *Lansing–Delaware Water Dist. v. Oak Lane Park, Inc.,* 248 Kan. 563, 571, 808 P.2d 1369, 1375 (1991).

## FACTS

Plaintiffs research, develop and market medical products which are used to promote the healing of wound injuries. Defendants, who previously worked for plaintiffs, now work for plaintiffs' rival. Plaintiffs filed suit on January 16, 1998, claiming that defendants acted wrongfully while employed by plaintiffs and revealed confidential information when they left. Defendants themselves filed suit in the Southern District of New York, shortly thereafter, alleging that their employer had committed various wrongful acts in the course of their employment.[1] The court in New York transferred the second case to this judicial district and this Court later consolidated the actions. On April 8, 1992, we entered an order which allowed Timothy Butler to appear pro hac vice, with Ruth Benien as local counsel.

In April of 1998, Butler contacted Tim Metz, former corporate secretary and legal counsel for plaintiffs, without the consent of plaintiffs' counsel. As an officer of plaintiffs, Metz saw numerous confidential documents and information. He also reviewed and drafted legal documents and provided legal advice to plaintiffs. Butler asserts that he did not ask Metz any questions regarding Metz's involvement in the case, and that he only attempted to set up Metz's deposition.

In April of 1998, on two occasions, Butler also contacted Melanie Brown. Brown was the former personnel director for plaintiffs, and Butler contacted her to discuss dates for her deposition Plaintiffs claim that he did so

---

**1.** To avoid confusion, the Court refers to Biocore Medical Technologies, Inc., et al., plaintiffs in Case No. 98–2031–KHV, as "plaintiffs," and to Hamid Khosrowshahi and Margaret Callaci, defendants in the same case, as "defendants." Their roles are reversed in Case No. 98–2175–KHV.

without the consent of plaintiff's counsel. Butler disagrees, asserting that he contacted plaintiffs' counsel before contacting Brown.

Butler also contacted Sam Campbell, a former director at plaintiffs' corporations, without the consent of plaintiffs' counsel. Butler subpoenaed Campbell for a deposition but first called him on the telephone. Butler claims that he only discussed setting up a deposition. Campbell testified, however, that Butler discussed a letter in which Khosrowshahi voiced concerns about plaintiffs' operations during the time that he worked for plaintiffs. Campbell testified that Butler referred to the contents of the letter and made derogatory comments about high-ranking employees of plaintiffs.

Shortly after filing suit for defendants in New York, Butler contacted Marilyn Johnson, a former employee of plaintiffs. Johnson had worked as the executive administrative assistant for various high-ranking officers of plaintiffs: the president, the chief executive officer, the chairman of the board, and the chief financial officer. Khosrowshahi was her immediate supervisor. While employed for plaintiffs, Johnson maintained corporate files, customer lists, expense reports, grant submissions, and information about sales, accounts receivable, and pricing structures. While general faxes went to a fax machine in a general location, faxes for high-ranking employees went to a fax machine in Johnson's office. Johnson received confidential faxes, opened confidential mail, pulled confidential information from files in her office, typed confidential correspondence, and had confidential information on computer disks. Johnson took to her home certain computer disks which contained information on sales, customer lists, medicare, and sales representatives' agreement letters and logs. Both parties originally listed Johnson as a potential witness in the case.

Defendants requested vast documentation regarding plaintiffs' operations. When plaintiffs turned over the documents, Butler learned that they were disorganized and unlabeled. Butler states that he contacted Johnson to help organize the documents. Johnson, however, claims that he contacted her before plaintiffs ever turned over the documents. Butler asserts that he did not ask Johnson the extent of her knowledge and experience about plaintiffs. Johnson testified that Butler did ask her about her knowledge, position and job tasks. During their initial visit, Butler and Johnson discussed the fact that she wanted to file a discrimination claim with the Equal Employment Opportunity Commission ("EEOC"). Johnson asked Butler if she needed to hire an attorney to bring her EEOC claim and Butler told her that he did not know about Kansas, but that she did not need to do so in New York or Connecticut. Johnson filed her EEOC claim the next day.

Butler hired Johnson to help organize the documents for $10 an hour. Johnson worked approximately 40 hours over the course of four days. Johnson testified that she went through the boxes of material, pulling documents that defendants were seeking. Johnson testified that she talked with defendants about the documents. Plaintiffs monitored defendants' use of the files while Johnson worked for Butler. Johnson and Butler insist that Johnson did not reveal any confidential information.

On June 5, 1998, Butler represented Johnson when plaintiffs deposed her. Butler stated that Johnson was his employee and he objected to certain questions by plaintiffs' counsel. Johnson did not compensate Butler in any way for his legal services. Butler testified that legal representation was necessary because plaintiffs had taken the deposition to harass Johnson, and Butler feared that much of the questioning would involve work-product privileged information resulting from her organization of defendants' discovery information.

In early June of 1998, Campbell gave his deposition. During this deposition, he produced documents that defendants wanted to copy. Bonnie Smith, an employee of Campbell–Becker, Campbell's corporation, was in charge of this copying. Butler asked Smith to have the copies Bates stamped. Smith testified that no copying business in Lawrence, Kansas could provide such copies and that the copies would need to be done in Topeka. On June 29, 1998, Butler called

Smith to ask about the status of the copies. Smith told him that the copies were not finished. According to Smith, Butler accused her of stalling and missing a deadline and threatened sanctions against her or her employer. Butler testified that he called Smith the day after Campbell's deposition, however, and that Smith told him that the documents had already gone out; that three weeks later, he called back; that Smith told him that it would be another two weeks before the copies could be made; and that at that point Butler asked for the name of Campbell–Becker's attorney and threatened sanctions.

On June 9, 1998, Butler served two subpoenas duces tecum on Bank of Blue Valley and KTEC. Butler listed June 29, 1998 as the deadline for documents to be produced. On June 19, 1998, Butler mailed plaintiffs a notice of these subpoenas. Plaintiffs received these notices on June 29, 1998—the very date that the documents were to be produced. On June 10, 1998, Butler served a subpoena duces tecum to Rutgers University, requiring production by July 2, 1998. Plaintiffs received notice of this subpoena on June 16, 1998.

On July 28, 1998, Butler issued subpoenas duces tecum to Kevin Head, Aljack Sales, Jeannie Wilhelm, Dennis Dees, Sr., and Dennis Dees, Jr. Butler ordered Head, Dees Sr., and Dees Jr. to comply by August 18, 1998. Butler required Aljack Sales and Wilhelm to comply by August 19, 1998. Plaintiffs received notice of all five subpoenas on August 7, 1998. On August 12, 1998, Butler served the subpoenas on Aljack Sales, Wilhelm, and Dees Sr. The subpoenas on Head and Dees Jr. have not been served. Butler did not file notices with the Court or serve certificates of service for any of the eight subpoenas.

Butler also did not have local counsel sign the subpoenas. In fact, defendants have issued 38 documents without the signature of local counsel. See defendants' *Memorandum In Opposition To Plaintiffs' Motion to Disqualify* (Doc. # 185), filed July 13, 1998, in which Butler acknowledged the violations and stated that defendants would obtain the signature of local counsel signature in the future. Even after plaintiffs made an issue of Butler's non-compliance, however, Butler still refused to comply. Instead of altogether omitting the signature of local counsel, however, he signed documents both as Timothy F. Butler and as local counsel. Butler testified that local counsel had authorized him to sign for her as local counsel.

Defendants have also failed to file numerous discovery documents with the Court. Again, Butler admitted to his violations and stated that defendants would correct their errors.

### ANALYSIS

### FEDERAL RULE OF CIVIL PROCEDURE 45(b)(1)

Federal Rule of Civil Procedure 45(b)(1) requires that "[p]rior notice of any commanded production of documents and things or inspection of premises before trial shall be served on each party in the manner prescribed by Rule 5(b)." Fed.R.Civ.P. 45(b)(1). Rule 5(b) provides that a party can make service either by delivery or mail to the opposing party's attorney. Fed.R.Civ.P. 5(b). When service is by mail, it is complete upon mailing. *Id.* Plaintiffs argue that Butler has not provided timely notice of subpoenas served under Rule 45(b)(1). Defendants argue that Butler has followed the rule to the letter.

Butler did not mail plaintiffs notice of the subpoenas to Bank of Blue Valley and KTEC until ten days after he had served the subpoenas. Butler served the subpoena on Rutgers University seven days before he gave plaintiffs any notice of the subpoena. Butler issued five more subpoenas on July 28, 1998. He gave plaintiffs notice of these subpoenas ten days later (in this case, before he served them).

Defendants argue that Rule 45(b)(1) *requires* counsel to effectuate service of the subpoenas before giving notice of the subpoenas to opposing counsel. Defendants argue that "prior notice" means notice prior to the date for compliance with the subpoenas. Plaintiffs argue that the notice should be concurrent with service of the subpoena, to provide them adequate time to respond to the subpoena before the date of compliance.

We find no case which has determined whether prior notice under Rule 45(b)(1) must be notice prior to service on the non-party or notice prior to the date for production. Courts have only addressed a complete lack of notice prior to document production. *See Callanan v. Riggers and Erectors, Inc.,* 149 F.R.D. 519, 519 (D.Vi.1992); *United States v. Santiago–Lugo,* 904 F.Supp. 43, 47 (D.P.R.1995); *Seewald v. IIS Intelligent Info. Sys., Ltd.,* 1996 WL 612497 (E.D.N.Y. Oct. 16, 1996); *Spencer v. Steinman,* 179 F.R.D. 484 (E.D.Penn.1998). The cases suggest, however, that "prior notice" means prior to service. In *Spencer,* the court found that a failure to give notice prior to the issuance of subpoenas violates Rule 45(b)(1). *Spencer,* 179 F.R.D. at 488–89. The court in *Seewald* found that even though opposing counsel received notice prior to production, this was insufficient to meet the requirements of Rule 45(b)(1). *Seewald,* 1996 WL 612497 at *4–5.

The Court therefore rejects defendant's argument. Under defendants' interpretation, Rule 45(b)(1) would allow a party to mail notice to opposing counsel one day prior to the date of compliance, effectively prohibiting opposing counsel from responding. Defendants acknowledged that this would be improper, but defendants provide no guidance as to what would be a proper amount of time to respond. The Court views defendants' argument as implying a "reasonable notice" requirement. Rule 30(b)(1) requires a party to give "reasonable notice" regarding a deposition. The advisory committee for the Federal Rules could easily have copied the reasonable notice requirement of Rule 30(b)(1). The committee's use of the term "prior" must be given effect. *See State ex rel. Stephan v. Racing Comm'n,* 246 Kan. 708, 792 P.2d 971 (1990); *Carver v. Bond/Fayette/Effingham Regional Bd. of School Trustees,* 146 Ill.2d 347, 167 Ill.Dec. 1, 586 N.E.2d 1273 (1992).

The Court's interpretation is bolstered by the history of Rule 45(b)(1). As plaintiffs' counsel noted during oral argument, 45(b)(1)'s predecessor, 45(d)(3) required an attorney to serve all other parties with notice of a subpoena and file proof of this notice with the court clerk before the clerk would issue a subpoena. Fed.R.Civ.P. 45, Siegel, David, *Practice Commentaries,* C45–18. Prior to 1991, Rule 45(d)(3) therefore required prior notice to counsel before an attorney could serve a subpoena duces tecum.

Based upon the cases, the history, and the language of Rule 45(b)(1), we interpret it to require notice prior to service of a subpoena duces tecum. At oral argument, defense counsel argued that such an interpretation would encourage misconduct, as opposing counsel could interfere with service of the subpoena. To the extent that the subpoena is improper, opposing counsel must be able to interfere with its enforcement. Moreover, to the extent that the subpoena is proper, opposing counsel has an ethical duty not to hide or destroy discoverable evidence or to interfere with its valid enforcement The judicial system relies on attorneys to adhere to lawful and ethical standards of conduct and the Court trusts that they will not abuse their notice.

 Because we interpret Rule 45(b)(1) to require notice prior to serving a subpoena duces tecum, we find Butler violated this rule by giving plaintiffs late notice of the subpoenas to Bank of Blue Valley, KTEC and Rutgers University. Butler's violations do not, however, warrant disqualification. While abuse of the subpoena process harms both opposing counsel and public confidence in the judicial system, *see Spencer,* 179 F.R.D. at 489–90, the purpose behind the notice requirement is to provide opposing counsel an opportunity to object to the subpoena. *Santiago–Lugo,* 904 F.Supp. at 47. When opposing counsel have notice and sufficient time to object, they are not prejudiced by the violation. *Seewald,* 1996 WL 612497 at *5. Plaintiffs received actual notice on all but two subpoenas with over ten days to object to the subpoenas. For the Bank of Blue Valley and KTEC subpoenas, defendants mailed notice ten days prior to the production date. Under 5(b), plaintiffs received notice on this date and had ten days to object. While plaintiffs did not actually receive these two notices until the date of production, they have not shown that they were harmed by this. At worst, this is not sufficient grounds

to disqualify Butler. Courts generally respond to Rule 45(b)(1) violations by striking the subpoenas, *see Santiago–Lugo,* 904 F.Supp. at 47, or allowing opposing counsel an opportunity to object. *See Callanan* 149 F.R.D. at 520. Because plaintiffs have not shown that they were prejudiced by Butler's violations, the Court refuses to exercise its inherent authority to disqualify counsel.

## FEDERAL RULE OF CIVIL PROCEDURE 5(d)

■ Rule 5(d) requires that all papers which must be served on a party after the complaint be filed with the court clerk, along with a certificate of service, within a reasonable time after service. Fed.R.Civ.P. 5(d). Butler did not file some of the subpoenas addressed above, or any certificate of service with the Court, as required by Rule 5(d).

Courts have found that documents filed up to six days after service are filed within a "reasonable time" under Rule 5(d). *See Katz v. Morgenthau,* 709 F.Supp. 1219, 1226. (D.C.N.Y.1989); *Claybrook Drilling Co. v. Divanco, Inc.,* 336 F.2d 697, 700 (10th Cir. 1964) (four days late still "reasonable"). Butler, however, had not filed notice of these subpoenas by the time of this hearing—almost two months after he mailed notice to plaintiffs. Butler's filings (or lack thereof) stretch far beyond the bounds of reasonableness.

Rule 5(d) does not provide any consequence for violations of its requirements. A failure to file is generally corrected by an order to compel filing. An entering of default for Rule 5(d) violations is rare. Wright & Miller, *Federal Practice & Procedure,* § 1152 (1987). Disqualification therefore appears to be too severe of a penalty under Rule 5(b). In addition, prejudice to the opposing party is a factor to consider in assessing Rule 5(d) violations. *Wilson v. United States,* 112 F.R.D. 42, 43 (N.D.Ill.1986). Plaintiffs have not shown any harm which flows from defendants' failure to file these documents with the Court. Any harm to plaintiffs resulted from Butler's lack of

prompt notice to them, not from his lack of filing with the Court.[2] This lack of prejudice also persuades the Court not to exercise its inherent authority to disqualify Butler for his violations of 5(d).

## D.KAN. RULE 83.5.4

■ Defendants assert that Butler "has substantially complied with the letter of the Local Rules and completely with their spirit." This is simply not true. D.Kan. Rule 83.5.4(c) requires that "[a]ll pleadings or other papers signed by an attorney admitted pro hac vice shall also be signed by a member of the bar of this court in good standing who shall participate meaningfully in the preparation and trial of the case or proceedings to the extent required by the court." D.Kan. Rule 83.5.4(c). Butler admits that he has violated this rule. We must determine if this violation warrants disqualification.

Sanctions for violations of the local rules are governed by the Federal Rules. *See* D.Kan. Rule 11.1(b), (c). The applicable federal rules state that disqualification is not the proper sanction. Rule 11(a) requires proper signatures on "[e]very pleading, written motion, and other paper." Fed.R.Civ.P. 11(a). Rule 11(a), however, states that an unsigned document is a curable defect: "An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party." *Id.* Rule 26(g) requires proper signatures on every discovery document. Fed. R.Civ.P. 26(g). Again, however, an unsigned "request, response, or objection" is a curable defect because the violating party has a chance to quickly correct the problem. *Id.*

The Court finds that Butler's violation of D.Kan. Rule 83.5.4 is not enough to warrant disqualification under the federal rules or the Court's inherent authority to disqualify. Butler testified that he has corrected the problem and that local counsel by the time of hearing had signed all but one document. Butler's actions to remedy his violation of Local Rule 83.5.4 are sufficient to cure this defect. Plaintiffs have shown no harm or

---

**2.** The Court appreciates that unless all documents are filed, the docket sheet and other court records will be necessarily incomplete and that this fact might result in prejudice to plaintiffs. On this record, however, no such prejudice is shown.

prejudice that Butler's violation has caused them.

■ The Court notes, however, that defendants' interpretation of D.Kan. Rule 83.5.4 is still incorrect in two key ways. First, defendants argue that D.Kan. Rule 83.5.4 allows Butler to sign for local counsel, so long as she authorizes his signature. This position is clearly wrong under established Kansas law. *United States v. Sapp,* 989 F.Supp. 1093, 1106 (D.Kan.1997); *In re Schwarten* 194 B.R. 239, 242 (D.Kan.1996); *Zapata v. IBP, Inc.,* 162 F.R.D. 359, 360 (D.Kan.1995). If defendants' position was correct, the need for the signature of local counsel would be obviated. The rule is not merely a technical requirement, but an attempt to keep local counsel abreast of the proceedings to which her name and reputation are attached. Kansas requires local counsel because she is infinitely more aware of Kansas law, both substantively and procedurally, and is supposed to help out-of-state counsel comply with Kansas law. This is especially necessary in this case, where out-of-state counsel has violated numerous rules. When out-of-state counsel signs for local counsel, whether authorized or not, this protection is at risk. Rule 83.5.4 requires local counsel to participate meaningfully in the proceedings. Any type of proxy signature ignores this directive, because there is no guarantee that local counsel has reviewed the document being submitted. *Schwarten,* 194 B.R. at 242.

■ Defendants' response also implies that D.Kan. Rule 83.5.4 does not require local counsel to sign subpoenas filed outside of Kansas. There is no authority to support this position. The rule provides that local counsel must sign all documents signed by a pro hac vice attorney. D.Kan. Local Rule 83.5.4. It does not provide an exception for subpoenas. *Id.* Local counsel's signature is required on every subpoena issued by defendants. The Court understands that this is not always convenient, but the need for local counsel's involvement outweighs any extra burden on counsel.

## D.KAN. RULE 26.3

■ D.Kan. Rule 26.3 requires a party to file notice of service of discovery disclosures, requests, or responses, including the date and type of service, as well as the party served. D.Kan. Rule 26.3. Butler admits that he violated this rule due to a miscommunication with local counsel, but states that he will fully comply in the future. Butler states that he now sends local counsel each document, with express directions what she is to do with it.

We find no cases which discuss the application of D.Kan. Rule 26.3 or the proper remedy for violations of it. The Court believes that, while it is not acceptable, Butler's violation of Rule 26.3 is curable. Plaintiffs did not suffer any harm on account of defendants' lack of filing with the Court. Defendants have remedied the error by filing the documents at issue.

## KANSAS MODEL RULE OF PROFESSIONAL CONDUCT 3.4

Under D.Kan. Rule 83.6.1, federal courts in the District of Kansas follow the Code of Professional Responsibility and Model Rules of Professional Conduct ("MRPC") as adopted by the Supreme Court of Kansas. D.Kan. Rule 83.6.1. The Kansas Supreme Court has adopted the MRPC as the "general standards of conduct and practice required of the legal profession in Kansas." Kan.S.Ct. Rules, Rule 226. The court also adopted the comments to the MRPC, "[t]o the extent that they are not inconsistent" with MRPC rules or Kansas case law. *Id.* Kansas continues to apply the Canons of Professional Responsibility ("CPR") "as general statements of required professional conduct." *Id.* The Kansas Supreme Court originally adopted the CPR under Kan.S.Ct. Rule 225. *Id.*

Model Rule 3.4(b) provides that a lawyer shall not "offer an inducement to a witness that is prohibited by law." MRPC 3.4(b). The comments to Rule 3.4 note that it is not improper to pay witness expenses, but that it is improper under the common law to pay a fee to an occurrence witness. The purpose of this rule is to prevent a party from improperly influencing witness testimony.

MRPC 3.4, cmt. Disciplinary Rule 7–109(c), which was part of the CPR and was the closest predecessor to Rule 3.4(b), provided that a lawyer could only reimburse a witness for reasonable expenses or loss of time in attending and testifying. DR 7–109(c).

Plaintiffs argue that Butler violated the Rule 3.4 in two ways: (1) in employing Marilyn Johnson to help him during discovery, and (2) in providing free legal services to Marilyn Johnson.

■ Employment of a witness can amount to inducing a witness when it serves as a pretext for paying a witness for testimony. *Committee on Legal Ethics v. Sheatsley*, 192 W.Va. 272, 452 S.E.2d 75, 80 (1994). Plaintiffs, however, have failed to show that Butler's hiring of Johnson was pretextual. Plaintiffs cite cases where counsel made an express agreement that payment was either directly in exchange for testimony or contingent upon a favorable outcome of the case. *E.g., Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990); *Sheatsley*, 452 S.E.2d at 78, 80. In such cases, the pretextual nature of the employment is obvious. That is not the case here, where Butler's agreement with Johnson did not require either her testimony or a favorable outcome for defendants before Johnson received her pay. To find a violation of Rule 3.4(b), the Court must find that Butler agreement to employ Johnson implied that Johnson would testify or Butler would only pay her upon a successful outcome. Butler has already paid Johnson for her services, so it is difficult to draw any reasonable inference that Johnson's pay was contingent on a favorable outcome for defendants. The record also contains no evidence that Butler based Johnson's pay on any testimony. Without evidence, the Court is unwilling to find that Butler violated Rule 3.4(b).

■ Counsel can provide an inducement by providing free legal service. *See In re Ayala*, 102 N.M. 214, 693 P.2d 580, 581 (1984). Plaintiffs argue that Butler provided free legal service to Johnson on two different occasions. There is no evidence that Butler

provided Johnson any legal advice regarding the substance of her EEOC claim. Both Johnson and Butler assert that he only answered her question regarding the need for an attorney to file her claim. While this information may technically constitute legal advice, it was of de minimis value and plaintiff could have obtained it for free from any number of other sources. The Court finds that Butler's statement about Johnson's EEOC claim does not constitute free legal service of a nature that would reasonably be expected to influence Johnson's testimony.

■ There is no dispute that Butler represented Johnson at her deposition, purportedly because he believed that plaintiffs had scheduled the deposition to harass her and obtain work product privileged information. The work-product privilege is designed to protect an attorney's strategic and legal impressions. *See Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir.1995). Based on the purpose of the rule, Butler himself is best suited to make work-product objections, not his employee. Only a "party" or the "party's representative" may assert the work-product privilege. Fed.R.Civ.P. 26(a)(3). A party's representative includes his "attorney, consultant, surety, indemnitor, insurer, or agent." *Id.* While Johnson probably qualifies as defendants' representative, Butler had the power to assert the privilege on his own.[3] He did not need to represent Johnson at her deposition in order to assert any work-product privilege.

Butler's assertion that plaintiffs scheduled the deposition solely to harass Johnson is also suspect. Both sides originally listed Johnson as a potential witness. Plaintiffs had a valid reason to depose her, as a potential witness in pending litigation with a vast amount of knowledge about plaintiffs' operation. Butler's reasoning appears to be that plaintiffs would harass Johnson based on her work for Butler. Butler could have easily avoided this problem by not hiring a potential witness. It does not appear that Butler had any need to provide free legal services to a potential witness or that Johnson had any

---

**3.** A party can instruct a witness at deposition not to answer a question when necessary to protect

the party's work-product privilege. Fed.R.Civ.P. 30(d)(1); *Resolution Trust Corp.*, 73 F.3d at 266.

legitimate need for the services of Butler, in particular.

By the same token, Butler's free legal representation of Johnson does not warrant disqualification. While unwise and unnecessary, Butler's conduct does not approach the conduct addressed in the two cases cited by plaintiffs. In both cases, an attorney expressly offered to provide free legal service in exchange for either false testimony or no testimony at all. *See Ayala,* 693 P.2d at 581; *In re Louis A. Rosen,* 88 N.J. 1, 438 A.2d 316, 316 (1981). This case is different. There is no evidence that Butler bargained for Johnson's testimony in exchange for legal services. The Court is unwilling to infer that Butler provided these services for Johnson as an attempt to induce a potential witness in the case. The Court finds that Butler did not violate Rule 3.4(b) by hiring Johnson and providing free legal representation at her deposition. In any event, if Butler truly intended to influence Johnson's testimony, he has probably failed. Johnson's credibility as a witness in favor of defendants is seriously diminished by the fact that plaintiffs can obviously use her employment with Butler as evidence of bias in favor of defendants.

## MODEL RULE 4.2

Model Rule 4.2 provides that "a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." MRPC 4.2. The comments to Rule 4.2 provide that the rule "prohibits communications by a lawyer for one party concerning the matter of representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization." MRPC 4.2, cmt.

Plaintiffs argue that Butler violated Rule 4.2 by contacting four former employees and officers of plaintiffs: Tim Metz, former legal counsel for plaintiffs; Melanie Brown, former personnel director; Marilyn Johnson, former executive administrative assistant; and Sam Campbell, former member of plaintiffs' board of directors.

Defendants respond by first arguing that Butler did not discuss the "subject matter of the representation" when he contacted these persons and that the "subject matter of the representation" does not include setting up deposition dates. Even if Butler's comments were so limited, however, the Court finds that deposition schedules are clearly within the subject matter of the representation. The "subject matter of the representation" in a litigated matter is not limited to the merits of the various claims; it includes the entire litigation process. Calling a party to set up a deposition is a discussion that concerns the litigation and requires the consent of that party's counsel. If Rule 4.2 prevents contacts with former employees, Butler has violated the rule even if he only discussed deposition dates.

Defendants next argue that Rule 4.2 does not prevent contact with former employees. Defendants argue that this issue is "abundantly clear," and that the majority view allows Butler to contact former employees. In Kansas, however, the matter is not as settled as defendants might wish. Defendants incorrectly argue that federal law controls the ethical standards of attorneys in federal courts, but the law is clear that federal district courts apply the state law of the state in which they sit. *In re Snyder,* 472 U.S. 634, 645 n. 6, 105 S.Ct. 2874, 2881 n. 6, 86 L.Ed.2d 504 (1985). Kansas law provides support on both sides of the issue. Attorneys who practice in Kansas courts (state or federal) have a duty to apply appropriate Kansas law, and cannot simply choose the position taken by the majority of states.

Kansas has not conclusively determined whether Rule 4.2 prohibits contact with former employees. Kansas courts and scholars have created three divergent approaches. In *Chancellor v. Boeing Co.,* 678 F.Supp. 250 (D.Kan.1988), Judge Crow found that the predecessor to Rule 4.2, DR 7–104(A)(1), prevented counsel from contacting current or former employees who have the authority to " 'bind' the corporation in a legal evidentiary

sense" *Chancellor*, 678 F.Supp. at 252. Judge Crow adopted the "management-speaking agent test" as the proper test of whether counsel could contact former employees. *Id.* at 253.

In 1991, the American Bar Association evaluated whether Rule 4.2 allowed contact with former employees. ABA Formal Advisory Opinion 91–359. The ABA found that Rule 4.2 and its comment did not address former employees. Therefore attorneys could contact all former employees, regardless of their position with the company or ability to impute liability to the company. *Id.*

In its own advisory opinion, the Kansas Bar Association disagreed with the ABA approach, resolving instead that Rule 4.2 and its comment prohibit contact with former employees when (1) the employee's act or omission may impute liability to the corporation or (2) the attorney is seeking information covered by the attorney-client privilege. KBA Formal Advisory Opinion 92–07.

In *Aiken v. Business & Indus. Health Group, Inc.*, 885 F.Supp. 1474 (D.Kan.1995), Judge Lungstrum rejected both the *Chancellor* approach and the KBA approach, *id.* at 1478, and adopted the ABA approach, noting that it is the majority approach. *Id.* at 1477.

In this case the Court does not need to determine which approach is correct and it saves that issue for another day. On these facts, the question is moot because even is we assume that Rule 4.2 prevents counsel from contact with *some* former employees, plaintiffs have not sustained their burden of proving that Rule 4.2 has been violated in a manner which is worthy of disqualification.

 Plaintiffs have not shown that any of the former employees who were contacted in this case meet the management-speaking test. There is no basis to finds that any of them, as former employees, have the ability to bind plaintiffs in a "legal evidentiary sense." *See Chancellor*, 678 F.Supp. at 253. To be a binding admission under Fed-

eral Rule of Evidence 801(d)(2)(D), the employee must make the admission during the employment relationship. Fed.R.Evid. 801(d)(2)(D); *Boren v. Sable*, 887 F.2d 1032, 1032 (10th Cir.1989). Former employees no longer have the authority to speak for the organization. *Miller v. Sirloin Stockade*, 224 Kan. 32, 35, 578 P.2d 247, 249 (1978). Because they are not agents of the employer, former employees cannot make a binding admission for the organization. *See Robinson v. Audi Nsu Auto Union*, 739 F.2d 1481, 1487 (10th Cir.1984) (statement not an admission when no agency relationship existed at time statement was made). Plaintiffs also fail to show that these former employees can impute liability to plaintiffs. While some of them may have been involved in the incidents which led to this litigation, plaintiffs have failed to provide evidence of any such involvement.

The KBA approach also prohibits contact with former employees to obtain attorney-client information. Again plaintiffs provide no evidence that any of the contacted persons, with the exception of plaintiffs' former counsel, had attorney-client information. While defendants admit that Butler contacted plaintiffs' former counsel, the Court cannot find a violation of Rule 4.2 in this case, where the former employee, who is an attorney, asserted the attorney-client privilege and refused· to provide privileged information. The Court therefore finds that Butler did not violate Rule 4.2 regardless of which approach Kansas would use.

### CANON 9

While Kansas has adopted the Model Rules of Professional Conduct, it maintains the Canons of Professional Responsibility as well. Kan.S.Court.R. 226. Canon 9 states "[a] lawyer should avoid even the appearance of impropriety." CPR 9. The text of Canon 9 implies that it is violated even without proof of actual wrongdoing, but Kansas requires "at least a reasonable possibility that some specifically identifiable impropriety did in fact occur." [4] *Industrial Parts Distribu-*

---

4. Some courts allow a presumption that an individual has disclosed confidential information after a showing that the individual possessed such information. *See Rentclub, Inc. v. Transamerica*

*Rental Finance Corp.*, 811 F.Supp. 651, 656 (M.D.Fla.1992), *MMR/Wallace Power & Industrial, Inc. v. Thames Associates*, 764 F.Supp. 712, 726 (D.Conn.1991). Kansas, however, does not

tors, Inc. v. Fram Corp., 504 F.Supp. 1194, 1198 (D.Kan.1981). Plaintiffs argue that Butler violated Canon 9 by employing Marilyn Johnson and contacting plaintiffs' former employees. Defendants pay short shrift to plaintiffs' claim of a violation of Canon 9 and summarily argue that plaintiffs' claim exists only in their minds. While the Court should not stretch Canon 9 beyond its bounds, it has not lost complete meaning. The Court must balance any fear of improper tactics by the moving party with the questioned actions. Kansas requires counsel to uphold the letter of Canon 9, and plaintiffs' counsel is not prevented from raising its claim when evidence of a violation exists.

The Court finds that Butler's contact with former employees Campbell, Brown, and Metz does not raise the appearance of impropriety because plaintiffs have not shown that the law prevents Butler from contacting these persons. However, Butler's contact with Johnson does raise an appearance of impropriety.

█ An attorney violates Canon 9 when he hires a witness who has been exposed to substantial confidential information, to assist in litigation against a former employer. Rentclub, Inc. v. Transamerica Rental Finance Corp., 811 F.Supp. 651, 655 (M.D.Fla. 1992), MMR/Wallace Power & Industrial, Inc. v. Thames Associates, 764 F.Supp. 712, 726 (D.Conn.1991); American Protection Insurance Co. v. MGM Grand Hotel, 1983 WL 25286 (D.Nev., Dec. 08, 1983). This is true even when the attorney takes precautions to prevent the disclosure of confidential and privileged information. MMR/Wallace, 764 F.Supp. at 726–27. Counsel is "not free to raid plaintiffs' roster of former employees where those employees, during their tenure, have become privy to matters protected by the attorney-client or work-product privilege or which are subject to employee agreements protecting [plaintiffs'] trade secrets." In re Data General Corp. Antitrust Litigation, 5 Fed.R.Serv.3d 510, 510 (N.D.Cal.1986). Instead, an attorney should use the discovery process to learn information about an opponent. Id.

█ In this case it is evident that Johnson possessed substantial confidential information about plaintiffs that she agreed to keep confidential. She worked as the executive administrative assistant for plaintiffs' president, chief executive officer, chairman of the board, and chief financial officer. Johnson maintained corporate files, customer lists, expense reports, grant submissions, and information about sales, accounts receivable, and pricing structures. While general faxes went to a fax machine in a general location, faxes for high-ranking employees went to a fax machine in Johnson's office. She received confidential faxes and opened confidential mail, pulled confidential information from files in her office, typed confidential correspondence, and had confidential information on computer disks. Johnson took to her home computer disks which contained information on sales, customer lists, medicare, and sales representatives' agreement letters and logs. Johnson possessed vast amounts of information about the inner workings of plaintiffs' business, including plaintiffs' financial actions. Because of the broad nature of this suit, much of this information is likely to be relevant.

Johnson possesses a veritable treasure-trove of information about plaintiffs' operations. She signed a confidentiality agreement with plaintiffs to prevent her from revealing any of this information. When he hired Johnson, Butler placed in doubt her ability to keep those confidences. In addition, it is now virtually impossible for plaintiffs and the Court to learn what information she has passed to defendants, perhaps even inadvertently. Johnson indeed signed a confidentiality agreement with Butler which prevents her from discussing her work for him. Butler has asserted his work-product privilege to prevent specific questions regarding what information Johnson has revealed. The only direct evidence regarding any breach of confidence, therefore, is the denial of impropriety by Johnson and Butler. These "self-

allow such a presumption, Lansing–Delaware Water Dist. v. Oak Lane Park, Inc., 248 Kan. 563,

571–72, 808 P.2d 1369, 1375–76 (1991).

serving protestations" do not help assuage the fears of both plaintiffs and the Court that Johnson indeed revealed confidential information. *See MMR/Wallace,* 764 F.Supp. at 727.

Even with the wall that Butler has created, the Court finds a reasonable possibility that Johnson has revealed confidential information as a result of her employment with Butler. Johnson spent 40 hours with Butler and defendants, pouring over plaintiffs' documents. When combined with Johnson's exposure to confidential business and financial records, there is a reasonable possibility that Johnson discussed information that is covered by her confidentiality agreement with plaintiff. The Court finds this possibility is more reasonable than the alternative hypothesis—that Butler carefully and cautiously directed Johnson's work and conversation in a way that avoided the release of any confidential information.

■■■ The Court must determine whether Butler's violation of Canon 9 should result in his disqualification in this case. Canon 9 should not be used to disqualify counsel when counsel has violated no more specific ethical standard. *United States v. Troutman,* 814 F.2d 1428, 1442 (10th Cir. 1987). While *American Protection, Rentclub,* and *MMR/Wallace* resulted in disqualification of counsel, the Court finds an important distinction in this case. In the three cases listed above, the former employee was involved in preparation for litigation and possessed attorney-client privileged information and confidential information regarding legal strategy. *See American Protection,* 1983 WL 25286 at *1; *Rentclub,* 811 F.Supp. at 655; *MMR/Wallace,* 764 F.Supp. at 714. Here, plaintiffs do not contend that Johnson possessed information regarding current litigation; she has not been privy to plaintiffs' legal maneuvering. The most important factor in determining whether to disqualify counsel is whether the actions have tainted the underlying trial. *Beck,* 568 F.Supp. at 1110. Plaintiffs provide no evidence that Johnson has disclosed anything that would harm them. Without some proof of prejudice, the Court refuses to disqualify Butler solely for a violation of Canon 9.

## MODEL RULE 8.4(g)

Model Rule 8.4(g) provides that "[i]t is professional misconduct for a lawyer to ... engage in any other conduct that adversely reflects on the lawyer's fitness to practice law." MRPC 8.4(g). The comment to Rule 8.4 provides that "[a] pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation." MRPC 8.4, cmt. Plaintiffs argue that Butler's conduct in its entirety amounts to professional misconduct. The Court has previously found that Butler violated Federal Rules of Civil Procedure 45(b)(1) and 5(d), D.Kan. Rules 83.5.4(c) and 26.3, and Canon 9.

■■■ The MRPC do not set forth specific conduct which results in an ethical violation. *Matter of Berg,* 264 Kan. 254, 270, 955 P.2d 1240 (1998). Rather, the Court must determine ethical violations by examining the attorney's actions in relation to the surrounding circumstances. *Id.* A course of errors can violate Rule 8.4(g) when it raises evidence of incompetence, even when the errors are unintentional. *Matter of Jenkins,* 255 Kan. 797, 805, 877 P.2d 423, 429 (1994). Counsel must "follow through on his responsibilities as a lawyer." *Id.* Counsel violates ethical standards when he is unable or refuses "to accept and perform the obligations of the legal profession." *State v. Dixon,* 233 Kan. 465, 472, 664 P.2d 286, 291 (1983).

The Court finds Butler has failed to follow required procedural and ethical rules to a degree which raises serious questions about his ability and willingness to accept and perform the obligations of his representation in this case. The Court recognizes that Rule 8.4(g) is a broad and vague ethical standard, but it is not without meaning. Butler's pattern of violations in this case borders closely on incompetence and it reflects adversely on his fitness to practice before this Court.

■■■ The Court must nonetheless determine whether disqualification is the appropriate remedy. Butler's violations, when combined, raise serious concerns regarding Butler's ability to follow the rules. Butler testified that he was ignorant of the rules

which he has violated in this case. The Court is willing to accept Butler's word that his acts were unintentional, although that word must give as little solace to his clients and opposing counsel as it does to the Court. The Court must still balance the seriousness of his violations with defendants' right to choose their own counsel and the hardship that disqualification would cause to defendants. *Lansing–Delaware Water Dist.*, 248 Kan. at 571, 808 P.2d at 1375.

The Court does not believe that disqualifying Butler at this point would cause harm to defendants. Defendant Khosrowshahi testified that his income is approximately $150,000 per year and he has an indemnity agreement with his current employer. Defendants have the resources to afford different counsel if necessary. Butler has not shown that his skills are so invaluable that he is irreplaceable and indeed, local counsel is fully competent to handle this matter without the assistance of Butler.

The Court must also consider defendants' right to choose counsel. Khosrowshahi testified that he still wishes to employ Butler as counsel, even with full knowledge of the numerous violations the Court has discussed. It is not the Court's duty to tell defendants who to hire.

■■■■■ Society's interest in ethical conduct is not harmed by allowing Butler to continue in this case. In Kansas, the ultimate factor is whether counsel's actions have "tainted" the underlying litigation. *Beck v. Board of Regents of State of Kan.*, 568 F.Supp. 1107, 1110 (D.Kan.1983). "Absent a threat of taint to the trial, we continue to believe that possible ethical conflicts surfacing during the litigation are generally better addressed by the comprehensive machinery of the state and federal bar". *Armstrong v.*

*McAlpin*, 625 F.2d 433, 444 (2d Cir.1980) (en banc), *vacated on other grounds and remanded*, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981). Butler's actions have only harmed him and his client. Plaintiffs have shown no harm to them based upon Butler's errors. The Court therefore finds that defendants' right to choose their own counsel outweighs the need for disqualification.

The Court is quick to note, however, that Butler has walked a fine line regarding his privilege to remain as counsel in this case. Defendants argue that plaintiffs seek to disqualify Butler because he is "dangerously competent." Needless to say, the Court takes a skeptical view of this contention. At this point, his ability to follow local law has been far from disciplined or competent, and he appears to have been more dangerous to himself than to the opposing parties. Also, while defendants claim that Butler has upheld the highest ethical standards, the Court believes that at best, he has waded in the murky waters which separate right from wrong. In so doing, he has violated both procedural and ethical rules.

Butler should now be well aware of his duty to uphold and abide by Kansas law. Any further violations **will** result in disqualification, because they will show that Butler has surpassed ignorance and acted either incompetently (i.e., that he is unable to abide by Kansas law) or with a complete disregard for the rules of this Court.[5] For defendants' sake if not his own, the Court implores Butler to avoid the need for further consideration of this matter.[6]

**IT IS THEREFORE ORDERED** that plaintiffs' *Motion To Disqualify Attorney Timothy F. Butler* (Doc. # 140) filed June 29, 1998 and plaintiffs' *Supplement To Motion*

---

5. The Court is especially concerned about the fact that Butler is seemingly unable to follow rules concerning which he has admitted knowledge. For example, after defendants became aware that Butler was violating D.Kan. Rule 83.5.4(c), Butler began to sign local counsel's signature, purportedly with her express authority. This was clearly improper.

 Also, the scheduling order in this case limited the argument and authorities section of nondispositive briefs and memoranda to 10 pages without prior leave of Court. While Butler may consider this motion dispositive as to his involvement in the case, it is not dispositive of the case itself. Defendants' argument section is 17 pages long. In addition, defendants cite cases and make arguments in the factual section, bringing the number of pages of argument and authorities to 27.

6. The Court notes that neither side has acted in good faith towards full compliance of all rules.

*and Memorandum In Support Of Motion To Disqualify Attorney Timothy F. Butler* (Doc. # 155) filed July 2, 1998 be and hereby are **DENIED.**

**IT IS HEREBY FURTHER ORDERED** that defendants must remedy all outstanding violations of Federal Rule of Civil Procedure (5)(d), Local Rule 26.3, and Local Rule 83.5.4 by September 16, 1998.

**IT IS HEREBY FURTHER ORDERED** that the Clerk mail a copy of this order to every court to which Timothy F. Butler has been admitted to practice, and that to facilitate such mailing, Butler no later than **September 11, 1998** shall file an affidavit which lists the dates and places of admission to all bars, state or federal, and registration numbers, if any, as well as the name, address and telephone number of the appropriate bar disciplinary administrator for that jurisdiction. Failure to file this information within the required time will cause the Court to summarily reverse its ruling on plaintiffs' motion to disqualify.